568 A.2d 1281

**COMMONWEALTH of Pennsylvania**

v.

**Tyrone Lee WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Submitted May 23, 1989.

Filed Jan. 16, 1990.

494

Neil J. Marcus, Monongahela, for appellant.

John C. Pettit, Dist. Atty., Washington, for Com., appellee.

Before OLSZEWSKI, MONTEMURO and KELLY, JJ.

KELLY, Judge:

In this appeal we are called upon to determine whether a police officer may formally arrest an individual whom the police officer has viewed committing a summary offense. The legality of the arrest is relevant to the derivative question of whether a search incident to the arrest was permitted under the circumstances. We find both the arrest and the search to have been lawful and affirm.

The relevant factual and procedural history may be summarized as follows. In March of 1987, at approximately 11:30 p.m., Officer James Brice of the Borough of Donora Police Department encountered a car parked with two wheels on the street and two wheels on the sidewalk while on a routine patrol in his police cruiser. Officer Brice approached to investigate, and as he did, he observed appellant standing to the side of the illegally parked car, urinating on an adjacent building. Officer Brice then got out of the police vehicle and, not recognizing appellant, asked him for some identification. Appellant replied by offering a name and an address outside of the Borough of Donora, but conceded that he had no proof of his identity.

Based on these facts, Officer Brice informed appellant that he would be issued a citation for disorderly conduct (for public urination), and apprised appellant that he would have to accompany him back to the police station so that some form of positive identification could be made. In accordance with standard procedure of the Donora Police Department, Officer Brice then conducted a brief weapons search of appellant's person before allowing him to enter

the police vehicle. While patting down appellant's pocket, Officer Brice felt a long object in the pocket of the jacket. Believing it could be a knife or another dangerous instrument, Officer Brice reached inside appellant's pocket and found eleven (11) packets of cocaine which had been lined up along the bottom of the jacket pocket. Appellant was then handcuffed and brought to the police station.

Subsequently, appellant was charged with possession and possession with intent to deliver a controlled substance.[1] Appellant filed a motion to suppress, alleging that the police lacked probable cause or reasonable suspicion to conduct the search. The motion was later denied. Following a bench trial, appellant was found guilty of possession of a controlled substance. Timely post-trial motions were filed and denied. Appellant was given a suspended sentence of 1–12 months. This timely appeal followed.

On appeal, appellant raises two issues:

I. DID THE TRIAL COURT ERR IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE?

II. DO THE POLICE HAVE A RIGHT TO SEARCH A DEFENDANT INCIDENT TO AN ARREST FOR A NON–VIOLENT SUMMARY OFFENSE?

(Appellant's brief at 2).

At the outset, we note that in reviewing a suppression order, our scope of review is limited primarily to questions of law. *Commonwealth v. White*, 358 Pa.Super. 120, 516 A.2d 1211 (1986); *Commonwealth v. Swint*, 256 Pa.Super. 169, 389 A.2d 654 (1978); *Commonwealth v. Chinea*, 246 Pa.Super. 494, 371 A.2d 944 (1977). We must determine whether the record supports the factual findings of the suppression court, as well as whether the inferences and legal conclusions drawn therefrom are reasonable. *Commonwealth v. Oglialoro*, 377 Pa.Super. 317, 547 A.2d 387 (1988). This Court has previously stated that in measuring support for factual findings,

1. 35 Pa.S.A. § 780–113.

"... [W]e are to consider all the evidence of record which supports the finding, *from whatever source*, and only such evidence of record which negates the finding which, as taken in the context of the record as a whole, remains uncontradicted. Moreover, with respect to "uncontradicted" evidence, due regard would have to be given to the fact that a trial court may simply reject evidence offered as "not credible," even where direct contradiction is not present."

*Commonwealth v. Carelli*, 377 Pa.Super. 117, 130 n. 1, 546 A.2d 1185, 1191 n. 1 (1988), *allocatur denied* 521 Pa. 609, 557 A.2d 341 (1988) (emphasis in original); *see also Commonwealth v. Rodriquez*, 387 Pa.Super. 271, 275 n. 2, 564 A.2d 174, 176 n. 2 (1989).

Instantly, appellant contends that police are powerless to conduct a search incident to a custodial arrest for a non-violent summary offense. In all such summary offense cases, appellant argues, the correct procedure for the investigating officer is to merely issue a citation. Appellant asserts that in the instant case, the police ignored the limits of their authority by arresting him for the non-violent summary offense of disorderly conduct, and by conducting a search incident to this arrest. Appellant submits, therefore, that any fruits of this search were unlawfully obtained, and therefore must be suppressed to comply with the exclusionary rule.

In response, the Commonwealth contends that appellant was lawfully arrested, and lawfully searched incident to arrest. The Commonwealth argues that the Pennsylvania Rules of Criminal Procedure provide that a defendant may be arrested for a summary offense where there is a danger that the defendant will flee. The Commonwealth reasons that because appellant could not properly identify himself, and did not live in the area of the arrest, there existed the possibility that the appellant would flee without responding to any citations issued against him. Thus, the Commonwealth maintains that the arrest was both necessary and was proper, and that any evidence seized during the arrest

was done so legally and properly admitted in trial against him.

In denying appellant's motion to suppress, and in denying appellant's post trial motions subsequently, the trial court embraced the position advanced by the Commonwealth. For the reasons which follow, we agree with the trial court's conclusion that appellant was lawfully arrested and the evidence obtained incident to appellant's arrest should not have been suppressed. Our reasoning is similar but not identical to that of the trial court. *See Commonwealth v. Allem,* 367 Pa.Super. 173, 179, 532 A.2d 845, 848 (1987) (an appellate court may affirm on alternate grounds).

We begin our discussion with the observation that the exclusionary rule only bars the introduction of evidence derived from *unreasonable* searches or seizures. *See Maryland v. Macon,* 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985), *citing United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); *see generally Commonwealth v. Melson,* 383 Pa.Super. 139, 556 A.2d 836 (1989) (Kelly, J., dissenting) (collecting cases). It is well established that a warrantless search incident to a lawful arrest is *reasonable,* and no justification other than that required for the arrest itself is necessary to conduct such a search. *See Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343, 349 (1979); *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427, 440–41 (1973); *Commonwealth v. Long,* 489 Pa. 369, 374, 414 A.2d 113, 115 (1980); *Commonwealth v. Trenge,* 305 Pa.Super. 386, 403, 451 A.2d 701, 710 (1982). Stated another way, in all cases of lawful arrests, police may fully search the person incident to the arrest. *Chimel v. California,* 395 U.S. 752, 756, 89 S.Ct. 2034, 2036, 23 L.Ed.2d 685, 689–90 (1969), *citing Carroll v. United States,* 267 U.S. 132, 158, 45 S.Ct. 280, 287, 69 L.Ed. 543, 553 (1925); *Weeks v. United States,* 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652, 655 (1914) (*dicta* ). Moreover, this doctrine encompasses all arrests, including those involving summary offenses. *See United States v. Robinson, supra, and its*

*companion, Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). Consequently, any evidence seized as a result of a search incident to a lawful arrest is admissible in later proceedings. *See Harris v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).

Applying these rulings instantly, we arrive at a simple proposition—if appellant's arrest for the summary offense was lawful, then the subsequent search of his person must have been reasonable, and therefore any evidence derived from the search was properly admitted against him. Both of appellant's contentions rest solely upon the alleged invalidity of the underlying arrest. Accordingly, we turn our discussion to an examination of the lawfulness of appellant's arrest for the non-violent summary offense of disorderly conduct.

### A.

On appeal, appellant relies exclusively on *Commonwealth v. Shillingford,* 231 Pa.Super. 407, 332 A.2d 824 (1975), in support of his contentions. Reliance on *Shillingford* is severally misplaced.

Quoting a *previous version* of the Pennsylvania Rules of Civil Procedure regarding summary offenses, the *Shillingford* Court reasoned, in *dicta,* that police may affect an arrest without a warrant for a non-traffic summary offense *only* when the summary offense "involves a breach of the peace, [or] endangers property or the safety of any person present." *Commonwealth v. Shillingford, supra,* 332 A.2d at 826, *quoting* Pa.R.Crim.P. 102 (renumbered and amended Sept. 1, 1975). The *dicta* from *Shillingford* upon which appellant relies was based on a rule which has since been repealed and materially revised. The present version of the Pennsylvania Rules of Criminal Procedure contains no "breach of the peace" requirement, but instead includes only a mandate that the arrest be "specifically authorized by law." Pa.R.Crim.P. Rule 51(d). Thus, the Supreme Court, by amending the Rules of Criminal Procedure, has withdrawn the foundation upon which *Shillingford* rested.

*Shillingford*, therefore, is simply no longer controlling precedent, or persuasive authority.

Moreover, the facts which gave rise to appellant's arrest here are materially distinguishable from those found in *Shillingford*. Significantly, the defendant in *Shillingford* presented proof of his identity at the request of the arresting officer. Having no cause to assume the identification offered was in any manner false, the arresting officer had no reason to suspect the appellant would flee the jurisdiction without responding to a citation. In this case, however, appellant provided no such assurance that he would not flee to avoid prosecution; no evidence, other than appellant's bald assertions, was offered to prove that a citation, if issued, would bear the offender's correct name or address. Thus, unlike in *Shillingford*, the arresting officer was left with no reasonable alternative but to insist upon verification of appellant's identity before release. Arrest and transport of appellant to the station was manifestly appropriate under the circumstances. In light of this important distinction, the holding in *Shillingford* is wholly inapplicable instantly.

## B.

The appropriate analysis is rather more complex than appellant suggests. The question of whether an officer is authorized to make an arrest depends initially on whether *state* law authorizes such action. *Michigan v. DeFillippo*, *supra*, 443 U.S. at 31, 99 S.Ct. at 560, 58 L.Ed.2d at 647. We begin here.

Statutory authority for law enforcement personnel to enforce laws and effect arrests in the Commonwealth of Pennsylvania may be found in several statutes. *See generally*, Gardner, *Arrest and Search Powers of Special Police in Pennsylvania: Do Your Constitutional Rights Change Depending on the Officer's Uniform?*, 59 Temple Law Quarterly 497 (1986); McCarthy, *Warrantless Arrests by Police Officers in Pennsylvania*, 92 Dickinson Law Review 105, (Fall 1987). Borough police, such as those involved in

the instant case, receive their statutory authority from 53 P.S. § 46121 which provides in pertinent part:

> [B]orough policeman, who shall be ex-officio constables of the borough, ... shall and may, within the borough or upon property owned by the borough ... *without warrant and upon view, arrest* and commit for hearing any and all persons guilty of a breach of the peace, vagrancy, riotous or *disorderly conduct* or drunkeness, or who may be engaged in the commission of any unlawful act tending to imperil the personal security or endanger the property of citizens, or for violating any ordinances of said borough for the violation of which a fine or penalty is imposed....

53 Pa.S.A. § 46121 (emphasis added). This authority has not otherwise been restricted by the Pennsylvania legislature.

The Pennsylvania Rules of Criminal Procedure define appropriate police action in summary offense cases as follows. Rule 51 provides:

> Criminal proceedings in summary cases shall be instituted either by:
>
> (a) issuing a citation to the defendant; or
>
> (b) filing a citation; or
>
> (c) filing a complaint; or
>
> (d) *arresting without a warrant when arrest is specifically authorized by law.*

Pa.R.Crim.P. 51 (emphasis added). Rule 70, which is intended to ensure that the police will identify their authority, additionally provides:

> When an arrest without a warrant in a summary case is authorized by law, a police officer *who exhibits some sign of authority* may institute proceedings by such an arrest.

Pa.R.Crim.P. 70 (emphasis added).

Although no other Rule of Criminal Procedure further augments or restricts police power to enforce the law in summary offense cases, the explanatory comment to Rule

70 suggests other limitations. In pertinent part the comment provides:

> It is intended that these proceedings will be instituted by arrest only in exceptional circumstances such as those involving violence, or the imminent threat of violence, or those involving a danger that the defendant will flee.

Pa.R.Crim.P. 70 comment. The comments, while often helpful in resolving *ambiguities,* are *not* controlling. *Commonwealth v. Ferrari,* 376 Pa.Super. 307, 317, 545 A.2d 1372, 1377 (1988). To the extent the comment purports to restrict express authority to arrest conferred by statute, it must be rejected.

As applied in the instant case, both the relevant statute and the Pennsylvania Rules of Criminal Procedure clearly allow for appellant's arrest. Appellant was arrested by a borough police officer who, within his jurisdiction, observed appellant committing an offense for which the police officer was specifically authorized to arrest, *i.e.* disorderly conduct. *See* 53 P.S. § 46121. Rules 51 and 70 each recognize authority to arrest in summary cases where such arrest is specifically authorized by law. Such authority is found in 53 P.S. § 46121.

Moreover, like the trial court, we find that this arrest also falls within the general *intent* suggested in the comment to Rule 70. The risk of flight does not end when a suspect is first detained and charged. Here there was no verification of identification; hence, there was no guarantee that a summons would indicate appellant's true identity or that Officer Brice would have any way to locate appellant to pursue the charge if appellant failed to appear in response to the summons on the appointed day. In this sense, there was a risk of flight within the meaning of the comment to Rule 70. In light of this possibility, and having no other way to verify any necessary information to ensure compliance with a citation, Officer Brice was left with no alternative but to arrest appellant and transport him to the police station for processing in order to adequately verify the offered identification. Had Officer Brice not elected to arrest appellant, his actions would have been tantamount to

releasing appellant without charge. Neither law nor reason could justify such a result.[2] Accordingly, we find that under the Pennsylvania law, appellant's arrest was authorized and that Officer Brice was merely discharging his solemn duty to the community in arresting appellant under the circumstances of this case.

### C.

■ Having concluded that Pennsylvania state law authorizes borough police officers to arrest without a warrant for the non-violent summary offense of disorderly conduct, we turn finally to the question of whether the state law is constitutionally *reasonable*. We find that it is.

Both the Pennsylvania Constitution and the United States Constitution guarantee the right to be secure from *unreasonable* searches and seizures.[3] An arrest warrant is *not* required to render the seizure of a person reasonable. *United States v. Miles*, 468 F.2d 482, 486 (3d Cir.1972); *Wakely v. Hart*, 6 Binn 316, 318 (Pa.1814); *Commonwealth*

2. We note the existence of case law in other jurisdictions in which distinctions based on the threat of avoiding compliance with citations in summary offense arrests have been upheld. *See e.g. U.S. v. Rutherford*, 824 F.2d 831 (10th Cir.1987) (where defendant does not furnish satisfactory evidence of identity or officer has reasonable grounds to believe the offender would disregard written promise to appear in court, arrest for summary offense is lawful); *People v. Clyne*, 189 Colo. 412, 541 P.2d 71 (1975) (same); *State v. Martin*, 253 N.W.2d 404 (Minn.1977) (citation must be issued if the defendant signs the citation agreeing to appear, *unless* it is reasonably apparent to the officer that arrest is necessary to prevent injury or to prevent further criminal acts, or that it is likely the defendant will fail to respond to the citations and such evidence was not shown).

3. U.S. Const.Amend. IV
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
Pa. Cons.Article I, § 8
The People shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or thing shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

*v. Westerfer,* 294 Pa.Super. 459, 462, 440 A.2d 556, 558 (1982). Rather, both the Pennsylvania Supreme Court and the United States Supreme Court have consistently held that police may arrest without a warrant where the arresting officer has at least probable cause to believe the person arrested has committed or is committing an offense. *See e.g. Michigan v. DeFillippo, supra; United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975 (1982); *Commonwealth v. Bartlett,* 486 Pa. 396, 406 A.2d 340 (1979); *Commonwealth v. Stokes,* 480 Pa. 38, 389 A.2d 74 (1978); *Commonwealth v. Douglass,* 372 Pa.Super. 227, 539 A.2d 412 (1988); *Commonwealth v. Anderson,* 360 Pa.Super. 466, 520 A.2d 1184 (1987).

At common law, an officer could arrest for felony offenses upon probable cause whether or not the officer had witnessed the offense, but could arrest for a misdemeanor only with probable cause and upon view. *Halsbury's Laws of England,* 344–345 (3d Ed.1955); I *Stephen's History of Criminal Law of England* 193 (1883); IV *Blackstone's Commentaries* *292 (Sharswood ed. 1872); II *Hale's Pleas of the Crown,* 85–98 (1736); *see also* Wilgus, *Arrest Without a Warrant,* 22 Mich.L.Rev. 541, 547–550 (1924). There was also enhanced authority at common law for night wardens or other officers to arrest and detain any suspicious person out after sunset. *See* IV *Blackstone's Commentaries, supra,* at *292; *cf. Commonwealth v. Cortez,* 507 Pa. 529, 491 A.2d 111 (1985).[4] While the common law authorizations have been displaced by express statutory authorizations and constitutional restrictions, the distinctions of the common law retain some vitality under the current schema. *Compare* IV *Blackstone's Commentaries* at *290 ("When the offender is not likely to abscond before a warrant can be obtained, it is in general better to apprehend him by a warrant than for a private person or officer

---

4. *See also,* Feldman, *The King's Peace, The Royal Prerogative and Public Order: The Roots and Early Developments of Binding Over Powers,* 47 Cambridge L.J. 101, 113 (England 1988).

to arrest him of his own accord, because if the justice should grant his warrant erroneously, no action lies against the party obtaining it."), *with* Pa.R.Crim.P. 70 comment, *infra.*

Any suggestion that the Pennsylvania or United States Constitutions prohibit custodial arrests for misdemeanors or summary offenses as *unreasonable per se* is wholly unsupported by case law. With regard to the federal constitution, the Fourth Circuit Court of appeals has cogently observed:

> While there have been intimations from some members of the Supreme Court that perhaps for some minor offenses no custodial arrest should be considered constitutionally permissible, *see Gustafson v. Florida,* 414 U.S. 260, 266, 94 S.Ct. 488, 492, 38 L.Ed.2d 456 (1973) (Stewart, J., concurring), the Court has never so held. *Robins v. California,* 453 U.S. 420, 450 & n. 11, 101 S.Ct. 2841, 2858 & n. 11, 69 L.Ed.2d 744 (1980) (Stevens, J., dissenting). Until such an interpretation of the reasonableness requirement of the fourth amendment is adopted by the Court, we must assume that it applies alike to all criminal offenses—without regard to severity or permitted punishment—to allow reasonable custodial arrests as the traditional means for invoking the criminal process.

*Fisher v. Washington Metro. Area Transit Authority,* 690 F.2d 1133, 1139, n. 6 (4th Cir.1982); *see Michigan v. DeFillippo, supra* (probable cause standard utilized in determining reasonableness of warrantless summary offense arrest); *United States v. Robinson, supra* (same); *United States v. Gustafson, supra,* (same); *see also United States v. Villamonte–Marquez,* 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983) (probable cause standard utilized in determining reasonableness of warrantless arrest for felony); *United States v. Watson, supra* (same).

Similarly, although Pennsylvania statutes and the rules of procedure have provided various restrictions upon arrest for summary offenses (primarily involving a continuance of the common law requirement that the officer view the offense, and further restrictions to limit arrest to those

where summons is not likely to be sufficient to preserve the peace and ensure appearance), appellant has not cited, nor have we discovered, any case suggesting *constitutional* limits in this regard. To the contrary, it has been plainly stated that our constitution enacted no restrictions on common law authority regarding warrantless arrests. *See Wakely v. Hart, supra; accord Commonwealth v. Schaeffer,* 370 Pa.Super. 179, 238–40, 536 A.2d 354, 383–84 (1987) (Kelly, J. concurring and dissenting), *allocatur granted,* 520 Pa. 596, 522 A.2d 251 (1988); *Commonwealth v. Ryan,* 21 Pa. D. & C. 457, 458 (1934); *Commonwealth v. Street,* 3 Pa.D. & C. 783, 787–88 (1923). Prior cases which have suggested or recognized restrictions upon the authority to arrest for summary offenses have all been decided upon *statutory* limitations or the more restrictive language of then applicable rules of criminal *procedure. See e.g. Commonwealth v. Trefy,* 249 Pa.Super. 117, 375 A.2d 786 (1977); *Commonwealth v. Gallagher,* 242 Pa.Super. 289, 363 A.2d 1274 (1976).

Moreover, where the officer is empowered to affect a reasonable seizure of the person through warrantless arrest, the decision to initiate criminal process falls plainly within the officer's broad discretion, and the exercise of that discretion is not constitutionally significant absent evidence of an arbitrary, vindictive, or discriminatory motive. *United States v. Gustafson, supra,* 414 U.S. at 265, 94 S.Ct. at 491–92, 38 L.Ed.2d at 456. ("Though the officer was not required to take the [offender] into custody ... we do not find [this] determinative of the constitutional issue. It is sufficient that the officer had probable cause to arrest...."). *Cf. Commonwealth v. Rocco,* 375 Pa.Super. 330, 338, 544 A.2d 496, 500 (1988) (holding that there is no duty in Pennsylvania to prosecute, and the decision to prosecute or not to prosecute is within the broad discretion of the prosecutor); *Commonwealth v. Stinnett,* 356 Pa.Super. 83, 95–96, 514 A.2d 154, 160–61 (1986) (discussing prosecutor's broad discretion generally). The "conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles,* 368 U.S.

448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446, 453 (1962).[5]
Absent a *prima facie* showing that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, this discretion may not be successfully challenged. *Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *Oyler v. Boles, supra; see also Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (discussing harsh treatment for exercise of lawful right); *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (same); *Commonwealth v. Rocco, supra, citing Bordenkircer v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (discussing discriminatory prosecution).[6]

## Conclusion

Appellant admits that the arresting officer witnessed him urinating in public, conduct which incontrovertibly consti-

**5.** *See generally,* Uviller, *Tempered Zeal, passim* (1988); Williams, *Police Discretion: The Institutional Dilemma—Who Is In Charge?,* 68 Iowa L.Rev. 431 (1983); LaFave, *The Police and Nonenforcement of the Law—Part I,* 1962 Wis.L.Rev. 104 (1962); Goldstein, *Police Discretion Not to Invoke the Criminal Process: Low–Visibility Decisions in the Administration of Justice,* 69 Yale L.J. 543 (1960).

**6.** To the extent that appellant's claim might arguably be viewed under the auspices of a "pretextual arrest" (an arrest which, though based on probable cause, is employed as a device to investigate or search for evidence of an unrelated offense for which probable cause is lacking) claim, we note that such challenges have not received favorable consideration generally, absent a separate and distinct claim of selective prosecution. *See United States v. Trigg,* 878 F.2d 1037, 1039 (7th Cir.1989); Haddad, *Pretextual Fourth Amendment Activity: Another Viewpoint,* 18 U.Mich.J.L.Ref. 639 (1985) (collecting cases). Review of an officer's decision to arrest is limited to an objective assessment of the probable cause to arrest in light of the facts and circumstances confronting the officer at the time, and as such an officer's uncommunicated intent to do an illegal act is irrelevant. *Maryland v. Macon, supra,* 472 U.S. at 463, 105 S.Ct. at 2778, 86 L.Ed.2d at 377; *see also Graham v. Connor,* 490 U.S. ——, 109 S.Ct. 54, 104 L.Ed.2d 443 (1989); *Scott v. United States,* 436 U.S. 128, 137–139, 98 S.Ct. 1717, 1723–24, 56 L.Ed.2d 168, 178 (1978); *United States v. Trigg, supra,* 878 F.2d 1037, 1041; *Cf. Commonwealth v. Melson, supra,* (Kelly, J., dissenting). In electing to exercise lawful *discretion* whether to arrest, legitimate suspicion of further criminal conduct can hardly be deemed an arbitrary, discriminatory, or vindictive motivation. Nonetheless, we need not decide the issue in the present case as appellant has not seen fit to raise it *directly* or *properly* preserve it for appeal.

tutes disorderly conduct. The probable cause to believe appellant was committing an offense was therefore manifest. Moreover, the relevant statute clearly authorizes borough police to arrest upon view for this offense and no relevant Pennsylvania Rule of Criminal Procedure or applicable prior case law mandates otherwise. We conclude, therefore, that appellant's arrest was authorized by the law of this Commonwealth, and that such law is constitutionally permissible.

In light of the foregoing, we hold that the search incident to appellant's lawful arrest was valid, and the fruits of that search were properly admitted at trial against him. Accordingly, we AFFIRM judgment of sentence.

MONTEMURO, J., filed a concurring opinion.

MONTEMURO, Judge, concurring:

Following a careful consideration of the present case, I find that while I agree with the majority that appellant's judgment of sentence should stand, I must write separately to set forth my views.

Pursuant to our Rules of Criminal Procedure, a police officer is provided with a choice as to the means of instituting proceedings where a case involves the alleged violation of a summary criminal offense. Pa.R.Crim.P. 51. One of these choices is "arrest without a warrant when arrest is specifically authorized by law." *Id.* In the present case, this was the course of conduct undertaken by Officer Brice. The trial court, in denying appellant's motion to suppress, found, as a factual matter, that the arrest of the appellant, and subsequent transport to the police department, "was done in order that some form of positive identification could be made of the defendant." R.R. at 68a. I agree that under the circumstances of this particular case, Officer Brice exercised sound discretion in arresting the appellant. His conduct is authorized by Pa.R.Crim.P. 51, and it did not result in a violation of appellant's right to be secure from unreasonable searches and seizures.

My concern with the majority's decision centers upon the treatment of the explanatory comment to Pa.R.Crim.P. 70. In *Commonwealth v. Costello,* 301 Pa.Super. 537, 448 A.2d 38 (1982), this Court opined:

> Although the committee's comments are not binding on us, they may be considered as effective aids when interpreting the meaning of the rules and amendments thereto. *Commonwealth v. Byrd,* 250 Pa.Super. 250, 378 A.2d 921 (1977). Additionally, Pa.R.Cr.P. 2 states that the rules shall be construed "as nearly as may be in consonance with the rules of statutory construction." Those rules authorize us to consider the report of the committee that drafted the amendment. 1 Pa.C.S.A. § 1939.

*Id.,* 301 Pa.Superior Ct. at 540–541, 448 A.2d at 40 (footnote omitted). In addition to the explanatory comment to Pa.R. Crim.P. 70, which explicitly favors institution of summary proceedings through the issuance of a citation as opposed to arrest, the following appears in the committee's introduction to Chapter 50 of our Rules of Criminal Procedure:

> The procedures set out in the following rules governing summary cases (as defined in Rule 3) recognize the importance of prompt notice that a summary offense is being alleged, while also taking account of the minor nature of summary offenses. Although the law recognizes the possibility of an arrest in some summary cases, it is intended under these rules that a citation will be issued to the defendant except in exceptional circumstances (such as those involving violence, or the imminent threat of violence or those involving a danger that the defendant will flee.)

> Recent experience with citation procedures indicates that most defendants will obey summary process in summary cases. The rule procedures here, therefore, are generally designed to favor the least intrusive means of instituting a summary proceeding. The general scheme laid out in these rules is that normally summary cases will be instituted not by arrest, but by a law enforcement

officer ... handing a citation to the defendant at the time the offense is committed.

Even though I agree that the arrest effected by Officer Brice in the case at bar was authorized both by our Rules of Criminal Procedure and by constitutional law, I believe our Supreme Court's intent with reference to the use of arrests in summary cases must be clearly set forth and emphasized. In most summary cases, due to the minor nature of these criminal offenses, public policy favors the issuance of a citation to the defendant who, upon receiving the citation, will be free to go. In most cases, arresting the defendant, thus restraining his personal freedom, is not necessary in order to assure that the defendant will obey summary process in summary cases. Encouraging the use of the least intrusive means of instituting summary proceedings will surely benefit the citizens of this Commonwealth as law enforcement officers who can effectively handle an incident involving a summary offense in a prompt manner will then be available to respond to calls concerning more serious criminal incidents.

Based upon all of the foregoing reasons, I concur.