655 A.2d 158

**In the Interest of WILLIAM M.**

**Appeal of COMMONWEALTH of Pennsylvania.**

Superior Court of Pennsylvania.

Argued Oct. 5, 1994.

Filed Feb. 24, 1995.

Michael Erlich, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Stuart Lev, Asst. Public Defender, Philadelphia, for appellee.

Before ROWLEY, P.J., and KELLY and CERCONE, JJ.

ROWLEY, President Judge:

The facts underlying this appeal are not in dispute. On October 26, 1993, at approximately 1:11 a.m., Police Officer Gerald McLaughlin, while patrolling in a marked police car in the city of Philadelphia, observed appellee William M. sitting outside a restaurant. Believing appellee to be in violation of the city's curfew ordinance, Officer McLaughlin stopped and asked appellee his age. When Officer McLaughlin ascertained appellee's age, he determined that appellee was in fact in violation of the curfew ordinance.[1] Officer McLaughlin then searched appellee, whereupon he found thirty-seven clear plastic vials containing an off-white chunky substance. The police officer placed appellee in the patrol car and transported him to the police station.

The trial court granted appellee's motion to suppress the vials and their contents on the basis that the police officer did not have authority to arrest appellee for a curfew violation. The Commonwealth filed this timely appeal, arguing that the officer had such authority pursuant to the curfew ordinance itself, 2 Phila.Code § 10–301, as well as 53 Pa.S. § 13349. Appellee, on the other hand, contends that the appeal is moot, that the officer lacked authority to effectuate an arrest, and that the search was unreasonable under Article 1, Section 8 of the Pennsylvania Constitution. After considering those arguments, we reverse the order granting the motion to suppress and remand for further proceedings.

■ Before addressing the Commonwealth's arguments relating to the merits of this appeal, we consider appellee's contention that the appeal is moot. Appellee argues,

The Commonwealth here appeals a decision that has no practical effect on this juvenile's rehabilitation, nor on the interests of the community, for even as this appeal is prosecuted, appellee is currently placed in Vision Quest, a secure, long term, extremely intensive juvenile rehabilitation program. Regardless of the outcome of this appeal,

---

1. Although the officer did not testify to appellee's age at the suppression hearing, it appears that appellee was fifteen years old.

appellee's progress in that program will continue to be monitored by the juvenile court and any additional necessary placements will be determined by his success, or failure, in that program. Thus, the Commonwealth presents this Court with what is wholly and purely an academic question in a prosecution that is already redundant to his current placement.

Brief for Appellee at 6 (footnote omitted). Appellee contends that because he is currently in placement, the goal of rehabilitation is already being furthered. We disagree. A consideration of the extent and nature of a juvenile's delinquent conduct is essential to the development of an appropriate treatment program. Furthermore, a large component of rehabilitation is the offender's awareness that his conduct, which would be subject to criminal sanctions if he were an adult, has consequences and that such conduct will not be tolerated in our society. To hold that a subsequent juvenile proceeding is moot where an offender has already been adjudged delinquent on the basis of other conduct and placed in a rehabilitation program would teach that offender, and others, that recidivism has no adverse consequences. Such a lesson protects neither the juvenile nor the public. Accordingly, appellee's contention that this appeal is moot is without merit.

We next consider the Commonwealth's arguments concerning the legality of appellee's arrest. The Commonwealth does not challenge the trial court's factual findings, which are not in dispute. Rather, the Commonwealth contends that the trial court committed an error of law in concluding that Officer McLaughlin did not have authority to arrest appellee for a curfew violation. The Commonwealth contends that both the ordinance itself and 53 Pa.S. § 13349 provide authority for the curfew violation arrest. Before considering that contention, we will review the cases cited by the trial court in its opinion and supplemental opinion.

The trial court relied on *Commonwealth v. Sams*, 465 Pa. 323, 350 A.2d 788 (1976), in support of its determination that the arrest in the present case was not authorized. In *Sams*, the defendant was apprehended by a police officer near the

scene of a murder. According to the officer, the defendant appeared to be under the age of sixteen; the officer therefore ordered the defendant into a patrol wagon for violating the Philadelphia curfew law which was in effect at that time.[2] The Supreme Court observed, in the footnote relied upon by the trial court in this case, that *"[a]t the time of [the defendant's] arrest* [in 1971,] the violation of the Philadelphia curfew was not an arrestable offense." *Id.* at 325 n. 1, 350 A.2d at 789 n. 1 (emphasis added). It would be reasonable to infer that the above statement, rather than supporting the trial court's conclusion that a curfew violation is not an arrestable offense, supports a conclusion that a curfew violation became an arrestable offense during the period between the date of the arrest in that case and the date of the Court's decision. If a curfew violation was not an arrestable offense at the time of the arrest and it was not an arrestable offense at the time of the Court's decision, there would have been no need for the Court to note that at the time of the defendant's arrest, a curfew violation was not an arrestable offense.

However, we have reviewed the past and present versions of the ordinance, specifically, the 1955 version, the 1977 version, and the 1980 version. The language relied upon by the Commonwealth in support of its assertion that the ordinance itself authorizes an arrest does not appear until the 1980 version. In 1955, the ordinance provided that an officer who discovered a minor violating the ordinance, after obtaining information as to the minor's name, address, age, and the names of his parents, should instruct the minor to proceed home. The officer would then forward the information obtained from the minor to the Juvenile Aid Bureau which would subsequently cause written notice to be mailed to the parents of the minor advising them of the violation. The 1977 version of the ordinance did not contain any substantial changes with regard to the above penalty provision.

**2.** The defendant subsequently confessed to the murder. However, because the only information given to the arresting officer was that "Negro males" were involved in the murder, the Supreme Court ruled that that confession should have been suppressed on the basis of an illegal arrest.

Accordingly, the Supreme Court's statement in *Sams,* which implies that a curfew violation became an arrestable offense between 1971 and 1977, is not grounded in the language of the ordinance itself. In addition to providing no support for the trial court's conclusion, therefore, the Supreme Court's decision in *Sams* also provides no support for the Commonwealth's contention that the curfew ordinance authorizes an arrest for a violation of its provisions.

In its supplemental opinion, the trial court cited *Commonwealth v. Bullers,* 536 Pa. 84, 637 A.2d 1326 (1994). In *Bullers,* the Supreme Court, affirming this Court's earlier decision reported at 410 Pa.Super. 176, 599 A.2d 662 (1991), considered an issue similar to the issue presented herein. Specifically, the Court considered whether an arrest of a minor for the summary offense of underage drinking was authorized where the minor did not exhibit disorderly conduct, a breach of the peace, drunkenness, or other irregular behavior. The Supreme Court, citing Pa.R.Crim.P. 51, noted that a criminal proceeding in a summary case is instituted in one of four ways: (1) issuing a citation to the defendant; (2) filing a citation; (3) filing a complaint; or (4) arresting without a warrant where arrest is specifically authorized by law. *Id.* 536 Pa. at 87–89, 637 A.2d at 1328. The Court then rejected the Commonwealth's assertion that the authority for the warrantless arrest was found in the provision of the Crimes Code which prohibits underage drinking, 18 Pa.C.S. § 6308. The Commonwealth argued, without success, that because the statute required a police department which made an arrest for a violation of that statute to notify the minor's parents or guardian, the statute specifically authorized such an arrest.

The Commonwealth also argued that the authority to arrest was found in section 46121 of the Borough Code. That statute provides that borough police officers can arrest without a warrant

any and all persons guilty of breach of the peace, vagrancy, riotous or disorderly conduct or drunkenness, or who may be engaged in the commission of any unlawful act tending to imperil the personal security or endanger the property of

the citizens, or for violating any ordinance of the borough for the violation of which a fine or penalty is imposed, and notwithstanding any statute pertaining to the same or similar offenses.

53 P.S. § 46121. Like the statute relied upon by the Commonwealth in the present case, the statute relied upon in *Bullers* authorized an arrest for the violation of a borough ordinance. However, the Commonwealth in *Bullers* did not argue that underage drinking was a violation of a borough ordinance for which section 46121 authorized a warrantless arrest. Rather, the Commonwealth argued that the summary offense of underage drinking fell within the provision of the statute which authorized an arrest for acts which imperil the personal security of citizens. Both this Court and the Supreme Court rejected that argument.

Accordingly, while supporting the general proposition that a warrantless arrest for a summary offense must be authorized by a specific statute, *see* Supplemental Trial Court Opinion (McCabe, J.), 3/30/94, the decision in *Bullers* provides no guidance as to whether the arrest in the present case was authorized. Accordingly, neither *Sams* nor *Bullers* supports the trial court's decision to grant appellee's motion to suppress.

We must determine, therefore, whether the trial court was nonetheless correct in concluding that authority to arrest for a curfew violation is not found in either the ordinance itself or in 53 P.S. § 13349.

The ordinance states in relevant part the following:

1. Any police officer who finds a minor in prima facie violation of the provisions of 10–303(1):

    \*    \*    \*    \*    \*    \*

(b) Shall take any of the following actions which he or she believes necessary to best protect the interest of the minor and the community:

    i. Instruct the minor to proceed to his or her home forthwith; or

ii. Transport the minor to his or her home forthwith; or

iii. Transport the minor to the appropriate district police station, where without unnecessary delay, the officer or a superior officer may issue a citation. The officer shall immediately notify the parent, guardian or other custodian of the minor's whereabouts. When a parent, guardian or other custodian arrives at the station, the minor will be released to the custody of said parent, guardian or other custodian, who shall thereupon be issued written notice that the minor has violated the provisions of 10–309(1). If a parent or guardian or custodian cannot be located within a reasonable time, the minor shall be released, unless other action is warranted under and pursuant to the pertinent provisions of the Juvenile Act. (42 Pa.C.S.A. 6301, et seq.)

2 Phila.Code § 10–306 (footnote omitted).

■ We agree with the Commonwealth that the ordinance itself gives police officers authority to arrest for a curfew violation. An arrest has been defined as "any act that indicates an intention to take the person into custody and subjects him to the actual control and will of the person making the arrest." *Commonwealth v. Lovette,* 498 Pa. 665, 671, 450 A.2d 975, 978 (1982), *cert. denied,* 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983). In *Lovette,* a police officer encountered a group of men near the scene of a burglary and theft. Because footprints had been discovered in a muddy plot of ground between the house burglarized and a vacant house containing stolen items, the officer's attention was drawn by mud on the men's shoes. One of the men was in possession of a bag which he stated, in response to an inquiry by the officer, contained a hat. The officer decided to transport the men to the scene of the burglary "for a possible identification." The owner of the burglarized home identified the hat as well as items in possession of one of the other men as items taken from his house. Under those circumstances, the Supreme Court held, "[I]t is clear that the placing of appellant and his companions in the police vehicle for the purpose of transport-

ing them to the scene of the offense, without their consent, constituted an arrest as that term has been defined under our cases." *Id.* 498 Pa. at 672, 450 A.2d at 978.

If transporting a suspect to the scene of a crime for a "possible identification" is an arrest, then transporting a minor to the police station so that a citation for an ordinance violation can be issued is also an arrest. A police officer's act of transporting a minor to the police station in order to issue a citation necessarily implicates taking the minor into custody and subjecting him or her to the officer's will.

Further, although the issuance of a citation without an arrest may be preferable when summary offenses are at issue, *see Commonwealth v. McGinley,* 386 Pa.Super. 547, 551, 563 A.2d 518, 520 (1989), we cannot conclude that Officer McLaughlin acted unreasonably in taking appellee into custody where the officer encountered appellee, a fifteen-year-old boy, sitting on a city sidewalk at one o'clock in the morning.

We also conclude that a warrantless arrest in this case was authorized by 53 P.S. § 13349. That statute provides:

Any police officer or constable, upon view of the breach of any ordinance of any city of the first class, is authorized to forthwith arrest the person or persons so offending, without any process, and to take said person or persons forthwith before any police magistrate or alderman of said city, who shall thereupon require bail for the appearance of said person at a time to be fixed for the hearing of said charge, and in default of bail to commit for a hearing; and at said hearing the case shall be proceeded with as if the parties were appearing before said magistrate or alderman upon a summons duly issued and returned served, or if both parties desire it the case may be entered and determined by the magistrate or alderman in like manner, without requiring bail or further continuance.

53 P.S. § 13349. This Court has considered the propriety of an arrest under similar statutes, *see Bullers, supra* 536 Pa. 84, 637 A.2d 1326; *Commonwealth v. Williams,* 390 Pa.Super. 493, 568 A.2d 1281 (1990); *Commonwealth v. Pincavitch,* 206 Pa.Super. 539, 214 A.2d 280 (1965), although the Court has not

considered the propriety of an arrest where, as here, the arrest is based on the violation of an ordinance. In *Williams,* for example, this Court held that a warrantless arrest for disorderly conduct was authorized by 53 P.S. § 46121, which states, in relevant part:

[B]orough policemen, who shall be ex-officio constables of the borough, [ ] shall and may, within the borough or upon property owned by the borough ... without warrant and upon view, arrest and commit for hearing any and all persons guilty of a breach of the peace, vagrancy, riotous or disorderly conduct or drunkenness, or who may be engaged in the commission of any unlawful act tending to imperil the personal security or endanger the property of citizens, or for violating any ordinance of the borough for the violation of which a fine or penalty is imposed, and notwithstanding any statute pertaining to the same or similar offenses.

53 P.S. § 46121. The Court in *Williams* determined that appellant committed an offense, disorderly conduct, for which the police officer was specifically authorized to arrest him.[3]

In *Pincavitch,* the trial court denied a motion to suppress where the defendant was arrested without a warrant for the summary offense of underage drinking. The trial court determined that the defendant's actions constituted a breach of the peace or such an act for which a borough police officer could make an arrest under 53 P.S. § 46121. This Court observed that that section permits an arrest for, among other things, the violation of a borough ordinance. In reversing, however, we stated:

The undenied averments of the application [for suppression] fail to justify an arrest for any of the reasons assigned by [the trial judge]. Walking on the street at three o'clock in the morning with the odor of liquor on ones [sic] breath does not constitute drunkenness, breach of the peace, vagrancy or riotous or disorderly conduct, nor does it consti-

---

**3.** The Court also determined that because the defendant could not verify his identity, there was a risk of flight within the meaning of the comment to Pa.R.Crim.P. 70, and if the officer had not arrested the defendant, he would in effect have been releasing the defendant without charge.

tute an offense committed in the officer's presence under the act forbidding minors to consume alcoholic or malt beverages.

*Pincavitch, supra* at 542–43, 214 A.2d at 281. It appears that the Commonwealth did not argue, and the Court did not consider, the propriety of a warrantless arrest for the violation of a borough ordinance.

By its terms, section 13349 permits an arrest where, as here, a police officer observes a breach of a city ordinance. Appellee, however, argues, "[I]t is clear that this statute cannot be relied upon in juvenile cases for the process of setting bail or immediately conducting a hearing is totally inconsistent with the requirements of the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.*" Brief for Appellee at 13. Appellee's argument would be more persuasive if he were challenging the setting of bail or the conducting of a hearing. Appellee does not do so. The Juvenile Act is not offended by permitting a police officer to arrest for a curfew violation pursuant to section 13349, if the officer subsequently observes the enforcement and penalty provisions of the curfew ordinance.

Appellee also contends that in passing the curfew ordinance, the City of Philadelphia limited police authority in this area by providing that the police may only instruct the minor to proceed to his or her home, transport the minor to his or her home, or transport the minor to the appropriate district police station for the issuance of a citation. However, we have already determined that the curfew ordinance permits a warrantless arrest. Accordingly, we need not consider this issue further.

■ Appellee also contends that even if the warrantless arrest was proper, the search incident to that arrest violates our state's constitution. This Court has held that "a search incident to a lawful arrest requires no other justification in order to be valid under Article I, Section 8 of the Pennsylvania Constitution." *Commonwealth v. Henry,* 358 Pa.Super. 306, 315, 517 A.2d 559, 564 (1986) (search of container in possession of motorist). *See also Commonwealth v. Guzman,* 417 Pa.Su-

per. 364, 612 A.2d 524 (1992), *appeal denied,* 535 Pa. 614, 629 A.2d 1377 (1993) (search of satchel in arrestee's possession). Appellee's contention to the contrary is meritless.

For the above reasons, we conclude that the trial court erred in concluding that the police did not have authority to arrest appellee for a curfew violation. We therefore reverse the suppression order and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.