**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTIAN ARTHUR WEBER, JR. | : | |
| | : | |
| Appellant | : | No. 2716 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 21, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0000723-2024

BEFORE:   LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:                          **FILED JUNE 2, 2025**

Christian Arthur Weber, Jr. ("Weber") appeals from the judgment of sentence entered by the Bucks County Court of Common Pleas ("trial court") after it convicted him of possession of a controlled substance, possession of drug paraphernalia, and public drunkenness (a summary offense).[1]  On appeal, Weber challenges the trial court's denial of his suppression motion. Because we find no error in the trial court's decision, we affirm.

The trial court summarized the factual and procedural histories of this case as follows:

> In the early morning hours of November 20, 2023, Officer Brown of the Upper Southampton Police Department received a bystander report of a man standing in a busy roadway.  Officer

---

[*] Former Justice specially assigned to the Superior Court.

[1]  35 P.S. § 780-113(a)(16), (32); 18 Pa.C.S. § 5505.

Brown located [Weber] in the roadway, noticed several signs of intoxication, and placed [him] under arrest. Following the search incident to arrest, Officer Brown discovered a capped syringe in [Weber]'s pocket, a blue wax baggy containing a solid white substance later determined to be fentanyl, as well as three vials in [his] wallet. [Weber] was charged with possession of a controlled substance, possession of drug paraphernalia, and public drunkenness.

On August 6, 2024, [Weber] filed a motion to suppress, challenging the legality of his arrest and subsequent search incident to arrest. On August 21, 2024, after a hearing on [Weber]'s motion, [the trial court] denied [Weber]'s motion to suppress. [Weber] then proceeded with a stipulated waiver trial and [the trial court] found [Weber] guilty of possession of a controlled substance, possession of drug paraphernalia, and public drunkenness. That same day, [the trial court] sentenced [Weber] to a term of probation for twelve months on the count of possession of a controlled substance, with no further penalty on the remaining counts.

On August 30, 2024, [Weber] filed a [post-sentence motion]. On [September] 4, 2024, the motion was denied. On October 3, 2024, [Weber] filed a notice of appeal to the Superior Court of Pennsylvania.

On October 7, 2024, [the trial court] ordered [Weber] to file a concise statement of errors complained of on appeal. After [the trial court] granted [Weber]'s motion for extension of time, on October 22, 2024, [Weber] filed a timely concise statement.

Trial Court Opinion, 12/3/2024, at 1-2 (footnotes and unnecessary capitalization omitted). Weber presents one issue for review: "Did the trial court err in denying suppression where police lacked probable cause to arrest [him] for public drunkenness?" Weber's Brief at 4.

Our standard of review for the denial of a suppression motion is well-settled:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Carey*, 249 A.3d 1217, 1223 (Pa. Super. 2021).

Weber raises two arguments in support of his claim of error. First, Weber argues that police lacked probable cause to arrest him for public drunkenness because he immediately complied with Officer Brown's command to remove himself from the road and he was cooperative with police throughout the encounter. Weber's Brief at 15. He maintains that his conduct after police arrived at the scene demonstrated that he was not an ongoing danger to himself, other persons, or property, and thus, police did not have the authority to conduct a warrantless arrest for a summary offense. *Id.* at 17-18.

Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution protect individuals from

unreasonable searches and seizures. Interactions between citizens and police fall into three separate categories:

> The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop or respond. The second, an "investigative detention," permits the temporary detention of an individual if supported by reasonable suspicion. The third is an arrest or custodial detention, which must be supported by probable cause.

***Commonwealth v. Lyles***, 97 A.3d 298, 302 (Pa. 2014) (citations omitted).

"Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." ***Commonwealth v. Saunders***, 326 A.3d 888, 897 (Pa. 2024) (quotation marks and citations omitted). "Probable cause is a practical, non-technical concept that is evaluated under a traditional totality-of-the-circumstances test." ***Id.*** (quotation marks and citations omitted).

The Pennsylvania Crimes Code defines public drunkenness as follows: "[a] person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol or a controlled substance … to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity." 18 Pa.C.S. § 5505. Importantly, section 8902(a)(1) of the Judicial Code authorizes police officers to arrest individuals without a warrant for the summary offense of public drunkenness "upon probable cause when there is ongoing conduct that imperils the personal security of any person or endangers public or private property." 42 Pa.C.S. § 8902(a)(1).

In rejecting Weber's claim that police lacked probable cause to arrest Weber for public drunkenness, the trial court explained:

> [T]he totality of the facts was sufficient to justify a person of reasonable caution in believing that [Weber] had committed the crime of public drunkenness. While the crime of public drunkenness is a summary offense, … Officer Brown had no alternative but to take [Weber] into custody in the interest of [Weber]'s own safety and the safety of others. [Weber]'s location in the roadway posed a risk of danger to himself and others traveling on the roadway. Therefore, Officer Brown possessed probable cause necessary to support the warrantless arrest of [Weber] for public drunkenness.

Trial Court Opinion, 12/3/2024, at 5.

The record reflects that at the hearing on Weber's suppression motion, Officer Brown testified that on the night in question, he was on a routine patrol near the Redwood Shopping Center in Upper Southhampton Township when an individual drove up to him at around 12:00 a.m. and informed him that there was a man standing in the roadway at the nearby intersection of Second Street Pike and Knowles Avenue. N.T., 8/21/2024, at 5-6. Officer Brown stated that he immediately traveled to the intersection where he encountered Weber. *Id.* at 7. Officer Brown explained that upon his arrival at the scene, Weber was standing in the roadway and that "[h]is knees were bent, his head was forward, and based on my training and experience, it appear[ed] he was nodding out or dipping out, which is a common term for someone who is under the influence of an opiate[.]" *Id.* Officer Brown also indicated that there was traffic on the roadway where Weber was standing. *Id.* at 8. Officer Brown testified that when he approached Weber, he noticed that Weber appeared

nearly asleep, his knees were buckling, he was slurring his speech, his eyelids were droopy, and he was unsteady on his feet. *Id.* at 11. Officer Brown stated that Weber's mannerisms were delayed, he did not know the time, and he had difficulty explaining where he was traveling. *Id.* Officer Brown reported that eventually, Weber informed him that he was walking home from a nearby gas station and that he lived roughly a mile-and-a-half away. *Id.* at 16, 20. Officer Brown explained that when he asked Weber for identification, Weber initially provided his debit card. *Id.* at 12.

Officer Brown testified that, based on his training and experience, Weber was displaying "telltale signs of someone who was under the influence of an opiate." *Id.* Additionally, Officer Brown stated that although Weber denied having used drugs, Weber eventually admitted that to having taken prescription medication. *Id.* at 21. Officer Brown explained that at that point, he did not believe Weber would be able to safely walk home, that he was a danger to himself and drivers in the area, and consequently, he placed him under arrest for public drunkenness. *Id.* at 13-15.

We emphasize that the trial court found Officer Brown's testimony credible, and Weber concedes this point. *See* Weber's Brief at 17. Instead, Weber asserts that because he complied with Officer Brown's instruction to remove himself from the roadway and because he was cooperative with police, he displayed no **ongoing** conduct that imperiled the personal security of any person or endangered any public or private property sufficient for the officer

to conduct a warrantless arrest for a summary offense under section 8902(a)(1). *See* Weber's Brief at 17-18. Weber's argument, however, is entirely belied by the record, as Officer Brown's testimony revealed that Weber was barely able to stand, let alone walk, he was confused as to his whereabouts, and was slurring his speech. *See* N.T., 8/21/2024, at 5-21. Furthermore, video from Officer Brown's Mobile Video Recorder and body camera shows that Weber was impeding traffic and that a vehicle had to slow down and drive around Weber to avoid hitting him. *See id.*, Exhibits CS-1, 2.

Evidence that Weber was compliant with Officer Brown's instructions is not evidence that he no longer presented an ongoing danger to himself or others, and he cites to no evidence indicating that his intoxicated condition somehow improved throughout the course of his interaction with police. Thus, the record plainly supports Officer Brown's determination that Weber presented a danger to himself and drivers in the area.

Accordingly, based on the foregoing, our review reveals that the trial court's factual findings are supported by the record. Additionally, we discern no error in the trial court's determination that the evidence established Weber's "ongoing conduct that imperil[ed] the personal security of any person," 42 Pa.C.S. § 8902(a)(1), and that Officer Brown had probable cause to arrest Weber for public drunkenness.

Second, Weber argues that police did not have the authority to arrest him for a summary offense because "conducting arrests in summary public

drunkenness cases is disfavored in the Commonwealth and is only appropriate in exceptional circumstances." Weber's Brief at 11. In addition to noting section 8902(a)'s requirement that an arrest for public drunkenness must include ongoing dangerous conduct, Weber relies on the explanatory comment to Pennsylvania Rule of Criminal Procedure 440, which he claims limits warrantless arrests for summary offenses to "exceptional circumstances" that involve violence, the threat of violence, or a risk that the defendant will flee, and that no such circumstances existed in this case. *Id.* at 13-14, 18.

Rule 440 states that "[w]hen an arrest without a warrant in a summary case is authorized by law, a police officer who exhibits some sign of authority may institute proceedings by such an arrest." Pa.R.Crim.P. 440. Weber is correct that the explanatory comment to Rule 440 states that "[o]nly a police officer, … may institute a summary criminal proceeding by arrest. It is intended that these proceedings will be instituted by arrest only in exceptional circumstances such as those involving violence, or the imminent threat of violence, or those involving a danger that the defendant will flee." *Id.*, Explanatory Comment. However, we previously rejected the argument that Weber makes here—that the comment to Rule 440 precludes an arrest for public drunkenness where the Commonwealth establishes "ongoing conduct that imperils the personal security of any person or endangers public or private property" pursuant to 42 Pa.C.S. § 8902(a)(1). *See Commonwealth v. Williams*, 568 A.2d 1281 (Pa. Super. 1990).

In **Williams**, the appellant likewise relied on the explanatory comment to Rule 440[2] to argue that the proper procedure for dealing with nonviolent summary offenses was to issue a citation as opposed to conducting a custodial arrest. **Id.** at 1282, 1284-85. We rejected this claim and explained that "[t]he comments, while often helpful in resolving ambiguities, are not controlling. To the extent the comment purports to restrict express authority to arrest conferred by statute, it must be rejected." **Id.** at 1285 (citation omitted); **see also Commonwealth v. Crosby**, 329 A.3d 1141, 1149 (Pa. 2025) (stating that to the extent that a comment conflicts with the text of a statute, the text of the statute controls).

In this case, as Weber concedes, section 8902(a)(1) plainly authorized Officer Brown to arrest Weber if he displayed ongoing conduct that imperils the personal security of any person or endangers public or private property. **See** 42 Pa.C.S. § 8902(a)(1). As we explained above, the record supports Officer Brown's determination that Weber's condition at the time of the encounter presented an ongoing danger, and that he therefore possessed probable cause to arrest him for the summary offense of public drunkenness. Thus, Weber's arrest was authorized by law, satisfying both the relevant statute and the Pennsylvania Rules of Criminal Procedure. **See id.**; Pa.R.Crim.P. 440.

_____

[2] At the time we decided **Williams**, Rule 440 was numbered Rule 70. **See Williams**, 568 A.2d at 1284-85; **see also** Pa.R.Crim.P. 440.

As such, the trial court correctly determined that Officer Brown had both probable cause and the authority to arrest Weber for public drunkenness. We therefore conclude that the trial court did not err in denying Weber's suppression motion.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/2/2025