**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Derek BLOOM, Appellee.**

Superior Court of Pennsylvania.

Submitted April 27, 2009.

Filed July 31, 2009.

Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, appellant.

Kevin R. Zinski, Pittsburgh, for appellee.

BEFORE: DONOHUE, CLELAND and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 The Commonwealth appeals from the order entered in the Allegheny County Court of Common Pleas granting the motion to suppress of Appellee, Derek Bloom. This case addresses the scope of jurisdiction granted to Port Authority police officers. We reverse and remand.

¶ 2 The suppression court issued a summary of pertinent facts:

> On September 1, 2007 at 2:42 a.m. a Port Authority Police Officer was in his vehicle stationed on the side of the HOV ramp of the Wabash Tunnel, about 500 feet from a traffic signal on Woodruff Street. [Appellee] was traveling on Woodruff Street. The Officer testified at the suppression hearing that he remembered seeing vehicles exit the tunnel, and believe[d] that they were in danger of being struck by [Appellee's] vehicle, which he said had proceeded through a red light on Woodruff. The Officer was able to stop [Appellee's] vehicle about 75 feet from the traffic light. Finally, after effectuating the stop, the Officer detected signs of [Appellee's] possible intoxication, administered field sobriety tests and took [Appellee] to a hospital for a blood sample.

> \* \* \*

> Neither the conduct of [Appellee], the possible [Motor Vehicle Code [1] violation], nor the stop of [Appellee's] vehicle occurred on Port Authority property.

(Findings of Fact & Conclusion of Law, 10/15/08). Appellee was charged with driving under the influence (DUI) [2] and

---

1. 75 Pa.C.S.A. §§ 101–8122.

2. 75 Pa.C.S.A. § 3802.

failure to stop at red signal.[3] He moved to suppress the evidence obtained in his arrest arguing that the officer lacked jurisdiction to stop him because he: (1) was never on Port Authority property; and (2) did not jeopardize Port Authority personnel, property, or passengers. The suppression court agreed, concluding that the Port Authority officer did not have jurisdiction to stop Appellee for violations of the Motor Vehicle Code. Thereafter, the Commonwealth filed this timely appeal.[4]

¶ 3 The instant appeal raises one issue for our review: whether the suppression court erred in concluding that the Port Authority officer lacked jurisdiction to stop Appellee's vehicle. The Commonwealth argues that the intersection where Appellee committed the vehicle code violations was in the immediate and adjacent vicinity of Port Authority property. In support of its argument, the Commonwealth submits that the uncontradicted testimony of the officer showed: (1) he was "on patrol" at the Wabash Tunnel which is Port Authority property, (Commonwealth's Brief, at 9); (2) the traffic light on Woodruff Street is activated by vehicles exiting the tunnel; and (3) the officer observed Appellee fail to stop at the stop light and then nearly collide with two vehicles exiting the tunnel. Accordingly, the Commonwealth contends that the officer had jurisdiction to stop Appellee's vehicle. We agree.

■■■ ¶ 4 Our standard of review is well-settled:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Jones,* 845 A.2d 821, 824 (Pa.Super.2004) (citation omitted).

■■■ ¶ 5 The Railroad and Street Railway Police Act states the powers and duties afforded to Port Authority police officers:

(a) **General Powers.**—Railroad and street railway policemen shall severally possess and exercise all the powers of a police officer in the City of Philadelphia, in and upon, **and in the immediate and adjacent vicinity of,** the property of the corporate authority or elsewhere within this Commonwealth while engaged in the discharge of their duties in pursuit of railroad, street railway or transportation system business.

22 Pa.C.S.A. § 3303(a) (emphasis added). Our Supreme Court has interpreted this statute as providing Port Authority police with two distinct grants of jurisdiction to exercise police power: primary and extraterritorial. *Commonwealth v. Firman,* 571 Pa. 610, 813 A.2d 643, 647 (2002).[5]

---

3. 75 Pa.C.S.A. § 3112.

4. The Commonwealth complied with the requirements of Pa.R.A.P. 311(d): "In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." *See* Pa.R.A.P. 311(d).

5. In *Commonwealth v. Firman,* 789 A.2d 297 (Pa.Super.2001) (*en banc*) (*Firman I*), this Court interpreted the plain terms of the Act to permit extraterritorial exercise of police power not simply where there is a threat to the welfare of Port Authority passengers or prop-

Port Authority police have primary jurisdiction, or "authority ... constrained by the geographical area corresponding within its territorial limits," to exercise regular police powers "in and upon, and in the immediate and adjacent vicinity of the property of the corporate authority." *Id.* Port Authority police are granted extraterritorial jurisdiction, or "authorization to arrest outside the territorial limits of the employer-municipality," *id.,* "elsewhere within this Commonwealth while engaged in the discharge of their duties in pursuit of ... transportation system business" so long as the exercise of this authority bears a close connection to the interests of the Port Authority. *Id.* (citing 22 Pa.C.S.A. § 3303(a)).

¶ 6 In *Firman II,* our Supreme Court addressed the extraterritorial jurisdiction conferred upon Port Authority police officers under the Railroad and Street Railway Police Act. *Id.* at 644. The case involved an on-duty Port Authority officer who was traveling between two Port Authority properties. *Id.* After the appellant almost struck the officer's vehicle, causing the officer to swerve to avoid a collision, the officer stopped the appellant who was subsequently charged with DUI. *Id.* at 644–45. The appellant moved to suppress the evidence contending that the officer lacked the authority to stop him on a public road. *Id.* at 645. The Supreme Court interpreted the Act as limiting the extraterritorial use of police powers by Port Authority officers:

> [B]y conditioning the grant of extraterritorial jurisdiction on engagement in the discharge of duties in pursuit of transportation system business, the General Assembly intended to require a closer connection between the interests of the transportation system and encounters in which police powers are to be exercised more than mere "on-duty" status of transportation system police on the observation of offenses.... [W]e find this interpretation to be supported by: the plain terms of the Act; reference to the specialized meaning of transportation system business ...; and the policy underlying the Act, namely, the maintenance of security of the transportation system and its charges.

*Id.* at 647. Despite this general interpretation, the Court asserted:

> In circumstances in which a motorist's conduct on a public highway jeopardized Port Authority personnel, property or passengers ..., we conclude that a sufficient connection to transportation system business arises such that extraterritorial jurisdiction of Port Authority policemen is implicated. Once police power is so enabled, absent a sufficient break in the encounter, its exercise may continue through an investigatory stop and/or arrest, where otherwise warranted.

*Id.* at 648.

¶ 7 Applying the reasoning set forth in *Firman II,* this Court, in *Com v. Quaid,* 871 A.2d 246 (Pa.Super.2005), addressed whether a railroad police officer may stop a vehicle for violation of the Motor Vehicle Code on a public highway where there only connection between the vehicle and railroad property or passengers was the existence of railroad tracks close to the public highway. *Id.* at 247. This Court reasoned that mere visibility of railroad

---

erty but also whenever an officer is engaged in the discharge of Port Authority business, even traveling from one Port Authority Property to another. *Id.* at 302. On appeal, our Supreme Court held, in *Firman,* 571 Pa. 610,

813 A.2d 643 (*Firman II* ), that extraterritorial jurisdiction is limited, and may only be asserted where there is a sufficient connection to transportation system business. *Id.* at 647.

tracks is not enough for the roadway to be considered "in the immediate and adjacent vicinity" of the railroad. *Id.* at 253–54. It further stated that "unless the place where Appellant was observed to drive in erratic fashion occurred 'in the immediate and adjacent vicinity of' [railroad] property, the stop must be deemed illegal." *Id.* at 253. Ultimately, this Court held that the railroad officer did not have the authority to stop the appellant. *Id.* at 254.

¶ 8 Here, the suppression court held that: (1) "there was insufficient evidence to show that [Appellee] had endangered persons of property under the purview of the Port Authority;" and (2) "neither the conduct of [Appellee], the possible vehicle code violation, nor the stop of [Appellee] occurred on Port Authority property." (Suppression Ct. Op., 12/08/08, at 3; Findings of Fact & Conclusion of Law). However, the suppression court neglected to consider whether vehicle code violation and stop occurred "in the immediate and adjacent vicinity" of Port Authority property. *See* 22 Pa. C.S.A. § 3303(a).

¶ 9 The uncontradicted testimony of the officer established that: (1) he was patrolling the Wabash Tunnel which is Port Authority property; (2) the Wabash Tunnel ramp intersects with Woodruff Street which is a municipal street; (3) the traffic light on Woodruff Street is triggered by a Port Authority-owned signaling system, located approximately 500 feet from the tunnel, which is activated by cars exiting the Wabash Tunnel; (4) Appellee was traveling on Woodruff Street and failed to stop at the red traffic light; (5) Appellee nearly collided with two vehicles that had just proceeded from the Wabash Tunnel ramp; (6) the officer pursued Appellee's vehicle and stopped him approximately 150 feet from Port Authority property, and 75 feet from the traffic light. (N.T., 7/29/08, at 5–

21). This evidence is sufficient to show that Appellee committed the violation and was stopped in the "immediate and adjacent vicinity" of Port Authority property. Therefore, *Quaid, supra* is factually distinguishable from the present case in that the vehicle code violation and stop in *Quaid* did not occur in the "immediate and adjacent vicinity" of railroad property. Here, because the Port Authority officer's stop occurred in the "immediate and adjacent vicinity" of Port Authority property, the officer had primary jurisdiction to stop Appellee. Thus, the Commonwealth met its burden of showing that the officer had the authority to stop Appellee. *See* 22 Pa.C.S.A. § 3303(a). Accordingly, the evidence from the stop was improperly suppressed.

¶ 10 Moreover, even if the officer had not exercised his authority in the "immediate and adjacent vicinity" of Port Authority property, the circumstances of Appellee's violation were sufficiently connected to transportation system business for a legal stop under the officer's extraterritorial jurisdiction. *See Firman II, supra* at 648. Pursuant to the standard set forth in *Firman II*, a Motor Vehicle Code violation is sufficient to trigger an officer's extraterritorial jurisdiction if it jeopardizes Port Authority passengers. *Id.* The officer's uncontradicted testimony showed that Appellee nearly hit two vehicles which were exiting the Wabash Tunnel ramp. (N.T., at 8).

¶ 11 Order reversed. Jurisdiction relinquished.