J-A28006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| STANLEY JONES | : | |
| | : | |
| Appellant | : | No. 3172 EDA 2014 |

Appeal from the Judgment of Sentence October 31, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0009096-2013

BEFORE:  GANTMAN, P.J., PANELLA, J., and DUBOW, J.

MEMORANDUM BY GANTMAN, P.J.:　　　　　**FILED DECEMBER 21, 2017**

Appellant, Stanley Jones, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial conviction for persons not to possess firearms.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises the following issues for our review:

> DID NOT THE [TRIAL] COURT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE WHERE THE TRANSIT POLICE WERE OUTSIDE OF THEIR JURISDICTION WHEN THEY STOPPED APPELLANT, AND

---

[1] 18 Pa.C.S.A. § 6105(a)(1).

THEY FRISKED HIM BASED ON NOTHING MORE THAN HIS PUBLIC URINATION?

DID NOT THE [TRIAL] COURT ERR IN DENYING APPELLANT'S MOTION TO PRECLUDE THE JURY FROM LEARNING THE NATURE OF HIS DISQUALIFYING CONVICTION UNDER 18 PA.C.S.[A.] § 6105, WHERE THE PRIOR CONVICTION WAS TWENTY-NINE YEARS OLD AND APPELLANT OFFERED TO STIPULATE TO ITS EXISTENCE OUTSIDE THE PRESENCE OF THE JURY?

DID NOT THE [TRIAL] COURT ERR IN PREVENTING APPELLANT'S COUNSEL FROM DISCUSSING APPELLANT'S RACE WHEN IT WAS APPROPRIATE TO REBUT THE INFERENCE OF CONSCIOUSNESS OF GUILT BASED ON APPELLANT'S FLIGHT FROM THE POLICE?

DID NOT THE [TRIAL] COURT ERR IN ALLOWING THE COMMONWEALTH'S ATTORNEY TO ARGUE IN CLOSING TO THE JURY THAT THE FIREARM IN THIS CASE WAS NOT TESTED FOR FINGERPRINTS OR DNA BECAUSE OF MUNICIPAL FUNDING ISSUES THAT THREATEN TO CLOSE THE PUBLIC SCHOOLS EVERY YEAR WHERE THAT ARGUMENT HAD NO BASIS IN EVIDENCE OR PUBLIC KNOWLEDGE AND WAS NOT APPROPRIATE MATTER FOR JUDICIAL NOTICE?

(Appellant's Brief at 4-5).

With respect to Appellant's challenge to the trial court's decision to preclude defense counsel's mention of Appellant's race during closing argument, a trial court should prevent the creation of "racial issues in a case where such issues would not otherwise have existed." **Commonwealth v. Richardson,** 504 Pa. 358, 364, 473 A.2d 1361, 1364 (1984). The trial court should avoid the creation of racial issues because it "might focus jurors' attentions upon skin color rather than upon the guilt or innocence of the accused." **Id.** This precept is especially important because the creation

of a racial issue "might interfere with the delicate balance of an impartial trial atmosphere, thereby beclouding the trial with prejudicial suggestions and implications." *Id.*

With respect to Appellant's challenge to the Commonwealth's comment on funding in Philadelphia, during closing argument, the Commonwealth is "permitted wide latitude to advocate [its] case, and may properly employ a degree of [oratorical] flair in so doing." ***Commonwealth v. Keaton***, 556 Pa. 442, 463, 729 A.2d 529, 540 (1999), *cert. denied*, 528 U.S. 1163, 120 S.Ct. 1180, 145 L.Ed.2d 1087 (2000). In fact, an appellant is not entitled to relief unless the Commonwealth's remark during closing argument has the unavoidable effect of prejudicing the jurors and forming in their minds such a fixed bias and hostility towards the defendant that they could not fairly weight the evidence. *Id.* Significantly, a comment that monetary reasons caused the absence of lab testing does not taint the jury when the trial court has instructed the jury that counsels' arguments are not evidence. *Id.* Moreover, a remark during closing argument about the cause of the Commonwealth's failure to pursue lab testing does not taint the jury because it is irrelevant to the issue of a defendant's guilt or innocence. *Id.*

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Sean F. Kennedy, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions

presented. (***See*** Trial Court Opinion, filed October 10, 2016, at 8-24) (finding: **(1)** Septa officers had jurisdiction over area surrounding Somerset Station pursuant to Operation Somerset; Septa officers were responsible for patrolling Somerset Station and two block radius around Station to enforce quality-of-life-crimes; around 3:45 p.m. on February 2, 2013, two Septa officers observed Appellant urinate in public within two block radius of Somerset Station; based on Appellant's location, Septa officers had jurisdiction to stop Appellant, and legal authority to arrest Appellant for summary offense of public urination and to perform search-incident-to-arrest of Appellant's person, under these circumstances, court properly denied Appellant's motion to suppress physical evidence; **(2)** Commonwealth was not required to stipulate to fact of Appellant's prior conviction because prior conviction was element of offense charged; admission of evidence of prior conviction did not result in unfair prejudice to Appellant; thus, court correctly denied Appellant's motion to preclude evidence of his prior conviction;[2] **(3)** because Appellant did not present any

_____

[2] To the extent Appellant argues the court erred when it admitted his prior conviction because it was twenty-nine years old, Appellant raises this claim for the first time in his appellate brief. Appellant's failure to raise this claim in the trial court results in waiver of that portion of his argument on appeal. ***See*** Pa.R.A.P. 302(a) (explaining issues not raised in trial court are waived and cannot be raised for first time on appeal). ***See also Commonwealth v. Cousar***, 593 Pa. 204, 231, 928 A.2d 1025, 1041 (2007), *cert. denied*, 553 U.S. 1035, 128 S.Ct. 2429, 171 L.Ed.2d 235 (2008) (explaining that
*(Footnote Continued Next Page)*

evidence during trial to suggest Septa officers stopped him due to his race, defense counsel's comment about Appellant's race was not based on evidence of record; as such, defense counsel's comment was not fair deduction or legitimate inference drawn from evidence presented during trial; moreover, defense counsel's comment was highly prejudicial and served only to interfere with jury's ability to render true verdict; thus, court properly sustained Commonwealth's objection to defense counsel's remarks about Appellant's race; **(4)** Commonwealth's remark was fair response to defense counsel's closing argument, which questioned why police did not process firearm for fingerprint and DNA evidence; additionally, Commonwealth's comment did not prejudice Appellant; further, court properly took judicial notice of funding issues in Philadelphia, which is matter of common knowledge in Philadelphia; thus, court properly overruled defense objection to Commonwealth's argument on funding). Accordingly, we affirm based on the trial court opinion.

Judgment of sentence affirmed.

_(Footnote Continued)_ ——————————

appellant is confined to specific objection made at trial when challenging admission of evidence on appeal).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/21/2017



**FILED**

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

OCT 1 4 2016

Criminal Appeals Unit
First Judicial District of P,

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-0009096-2013
                                  :

vs.                                 :

                                : SUPERIOR COURT

STANLEY JONES                   ,   : NO. 3172 EDA 2014

**OPINION**

CP-51-CR-0009096-2013 Comm. v. Jones, Stanley
Opinion

KENNEDY, SEAN F., J.                                 October 10, 2016



7512116371

## PROCEDURAL HISTORY[1]

On February 2, 2013, Stanley Jones (hereinafter, "the Defendant") was arrested and charged with possession of a firearm prohibited, 18 Pa.C.S. §6105(a)(1), and various other offenses.[2] During the course of the underlying proceedings, the Defendant filed multiple motions.

On October 9, 2013, the Defendant filed an omnibus pre-trial motion to suppress statements and physical evidence [prescribed pills, money and a handgun]. On March 18, 2014,

---

[1] At the outset, the Court notes that the court reported misstates the date of hearing on a number of the transcripts provided to this Court. As such, the procedural history and the citations to the record, noted herein require some clarification. The record for the motions hearing held on August 26, 2014 (hereafter, "N.T., 8/26/2014"), may be found by reference to the transcript dated August 16, 2015, titled "Trial (Jury) Volume 1." The record for the trial proceedings held on August 27, 2014 (hereinafter "T.T., 8/27/2014"), may be found by reference to the transcript dated August 27, 2015, titled "Trial (Jury) Volume 1." The record for the closing statements presented on August 27, 2014 (hereinafter "Closing, 8/27/2014"), may be found by reference to the transcript dated August 27, 2015, titled "Hearing Volume 1." The record for the trial proceedings held on August 28, 2014 (hereinafter, "N.T., 8/28/2014"), may be found by reference to the transcript dated August 28, 2015, titled "Trial (Jury) Volume 1."

[2] The other offense included possession of a controlled substance with intent to deliver, 35 Pa.C.S. §780-113(a)(30); aggravated assault, 18 Pa.C.S. §2702(a); carrying a firearm without a license, 18 Pa.C.S. §6106(a)(1); possession of a controlled substance, 35 Pa.C.S. §780-113(a)(16); carrying a firearm in public, 18 Pa.C.S. §6108; simple assault, 18 Pa.C.S. §2701(a); recklessly endangering another person, 18 Pa.C.S. §2705; and, resisting arrest, 18 Pa.C.S. §5104.

1

the Defendant filed a motion to quash the charge of aggravated assault. Both motions were addressed before this Court on March 19, 2014. Following oral arguments, this Court granted the Defendant's motion to quash the charge of aggravated assault. Immediately thereafter, the matter proceeded to a suppression hearing. At the conclusion of the hearing, this Court granted the Defendant's motion to suppress statements, but denied the Defendant's motion to suppress physical evidence.

On August 22, 2014, the Defendant filed two (2) motions in limine. One motion sought to preclude the introduction of disqualifying prior convictions. The other sought to preclude evidence of narcotics [prescribed pills] and money recovered from the Defendant, as well as expert testimony relative to the street value of the narcotics. Following oral arguments heard on August 26, 2014, this Court granted the Defendant's motion to preclude evidence of the narcotics, as well as expert testimony as to the street value of the narcotics, but denied the Defendant's motion to preclude introduction of the disqualifying prior conviction of felony robbery.[3] Immediately thereafter, the matter proceeded to a jury trial.

On August 28, 2014, the jury found the Defendant guilty of possessing a firearm prohibited. On October 29, 2014, appellant filed a motion for extraordinary relief, requesting a new trial and claiming that he was denied his right to due process when: 1) the Court sustained the Commonwealth's objection to defense counsel's mention of his race as an alternative reason for the Defendant's flight from the police; 2) the Court overruled defense counsel's objection to the Commonwealth's mentioning funding for Philadelphia schools as the reason the Commonwealth did not offer evidence of fingerprinting or DNA; and, 3) when the Court took

---

[3] As of August 26, 2014, the Commonwealth did not intend to proceed on the narcotic charges. As such, this Court determined that the evidence of the narcotics were no longer relevant and further, that the prejudicial value of said evidence outweighed any probative value. See, N.T., 8/26/2014, pp. 10-18.

judicial notice of the funding problem in Philadelphia schools. This motion was denied by this Court, following oral arguments heard on October 31, 2014.

On October 31, 2014, this Court sentenced the Defendant to a guideline sentence of five (5) to (10) ten years' incarceration for the crime of possessing a firearm prohibited. On November 5, 2014, Defendant timely filed a post-sentence motion requesting a new trial, which was denied, without a hearing, by Order of this Court, on November 10, 2014.[4]

On November 14, 2014, the Defendant filed a timely notice of appeal. On November 21, 2014, this Court issued a 1925(b) order, directing the Defendant to file a statement of errors complained of on appeal within twenty-one days. On December 12, 2014, the Defendant filed a timely statement of errors complained of on appeal, along with a request to file a supplemental statement upon receipt of all notes of testimony. On July 1, 2016, the Defendant filed a supplemental 1925(b) statement, which this Court deemed timely filed.[5]

## FACTUAL BACKGROUND[6]

Officer Max Frei is employed by Septa as a police officer.[7] In February 2013, he was detailed to Operation Somerset, which was a joint collaborative agreement between Septa and the Philadelphia Police Department involving the Somerset El Station located at Kensington Avenue and Somerset Street.[8] His duties with Operation Somerset entailed patrolling the area at,

---

[4] The allegations of error claimed in the Defendant's post-sentence motion are the same as those claimed in his motion for extraordinary relief.

[5] By order dated July 6, 2016, this Court issued a supplemental 1925(b) order finding the Defendant's supplemental 1925(b) statement to be timely filed. Complete notes of testimony were not received by the Defendant, or this Court, until June 21, 2016.

[6] See, fn. 1

[7] As of March 19, 2014, Officer Max Frei had been employed by Septa as a police officer for more than seven (7) years. He had been patrolling for Septa, in the Kensington/Frankford area of the city and county of Philadelphia, for more than four years. Suppression Testimony (hereinafter, "S.T."), 3/19/2014, pp. 8-10.

[8] Operation Somerset had been in existence for approximately two (2) years. Crime at and around the Station had gotten so bad that police presence was required all the time. S.T., 3/19/2014, p. 11.

and within, a two (2) block radius of the Somerset Station, to enforce quality-of-life crime and to make the area at and surrounding the Station safer.[9] S.T., 3/19/2014, pp. 10-11; T.T., 8/27/2014, pp. 10-13.

On February 2, 2013, at approximately 3:45 p.m., Officer Frei and his partner, Officer Davilla, were on routine patrol, traveling in a vehicle on the 2800 block of Ruth Street. At that time, Officer Frei witnessed the Defendant urinating against the front garage wall of a motorcycle club that was located at 2846 Ruth Street. Officer Frei approached the Defendant, asked the Defendant to put his hands against the wall, and started to conduct a pat down of the Defendant, when he felt what he believed to be a handgun in the Defendant's front waistband. [10,11] At that point, the Defendant fled. S.T., 3/19/2014, pp. 10, 12-13; T.T., 8/27/2014, pp. 13-15.

Officer Davilla immediately pursued the Defendant on foot. Officer Frei ran back to his police car, which was still running, and he then proceeded to follow Officer Davilla and the Defendant, by vehicle. Officer Frei saw Officer Davilla and the Defendant run north on Ruth Street and west onto Monmouth, towards Kensington Avenue, and at that point, he then lost sight of them for fifteen (15) to twenty (20) seconds. He drove to Monmouth and Kensington and at that point, Officer Davilla radioed that he was in the thrift store at that location. Officer Frei ran

---

[9] Officer Frei described quality-of-life crimes as including urinating in public, drinking in public, using drugs in public, theft and robbery. T.T, 8/27/2014, p. 12.

[10] Officer Frei carries a firearm every day as part of his job. S.T., 3/19/2014, pp. 17; T.T., 8/27/2014, p. 19. He has had training in firearms. He has made seven (7) or eight (8) arrests for firearm offenses. When Officer Frei put his hand on the gun in the Defendant's front waistband, he knew what it was immediately. T.T., 8/27/2014, pp. 19-21.

[11] Officer Frei had authority to issue a citation on the spot, or to arrest the Defendant and take him to the district for processing. The standard procedure when issuing a citation for a summary offense is to conduct a pat down search for weapons. S.T., 3/19/2014, pp. 13, 15-17; T.T., 8/27/2014, pp. 15-18.

4

into the store and followed Officer Davilla and the Defendant through the store, out the back door and north on Ruth Street. S.T., 3/19/2014, p. 13; T.T., 8/27/2014, pp. 21-24, 36-38, 40-42.

The chase continued to 2955 Ruth Street, where the Defendant climbed a wall and then stopped; he was cornered. Officer Frei drew his weapon and ordered the Defendant to come over the wall. After several commands, the Defendant climbed to the top of the wall, where he laid stomach-down, with one hand on the other side of the wall and out of view. When the Defendant did not comply with commands to come off the wall, Officer Frei holstered his weapon and sprayed the Defendant with mace. Both officers then pulled the Defendant off the wall, and onto the ground. Following a brief struggle, Officer Frei placed the Defendant in handcuffs.[12] S.T., 3/19/2014, pp. 13-14; T.T., 8/27/2014, pp. 24-28.

Once the Defendant was handcuffed, Officer Frei searched the Defendant, as well as the area around the wall, for a gun. He did not find one. T.T., 8/27/2014, p. 28. The officers then began to walk the Defendant back to the police vehicle and at that time, Officer Davilla retrieved a black and silver, Smith & Wesson, .40 caliber handgun from underneath a gray pickup truck on Monmouth Street, in between Ruth and Kensington.[13] S.T., 3/19/2014, p. 14; T.T., 8/27/2014, p. 29, 38, 40-41.

On February 2, 2013, at approximately 3:45 p.m., Septa Police Officer Davilla (hereinafter, "Officer Davilla") was on duty, working with his partner, Officer Frei.[14] S.T.,

---

[12] For completeness, the Court notes that Officer Frei testified that the Defendant did not suffer any injuries; however, both officers did. Officer Frei received a couple of stitches to his left knee; Officer Davilla had scrapes and his hands were all tore up. T.T., 8/28/2014, pp. 27-29. Officer Frei also testified that immediately before the Defendant was placed in the police vehicle, the Defendant was searched and at that time, Officer Frei recovered 540 or 640 pills, as well as $540., from the Defendant's person. S.T., 3/19/2014, pp. 13-14.
[13] Officer Frei observed Officer Davilla walk right over to the pickup truck and retrieve the handgun. T.T., 8/27/2014, p. 29.
[14] Officer Davilla has served as a Septa Police Officer for almost five (5) years. He has been assigned to the Frankford area for his entire years of service. Id. at 115-116.

5

3/19/2014, p. 26-27; T.T., 8/27/2014, p. 116. The officers were on routine patrol in the Somerset area, traveling in a vehicle on Ruth Street, when Officer Davilla saw the Defendant urinating near a building. T.T., 8/27/2014, pp. 116-117. Officer Frei approached the Defendant and began to frisk him, and at that point, the Defendant fled. Officer Davilla chased the Defendant on foot. He ran up Ruth Street and then left onto Monmouth Street, where he saw the Defendant toss a silver object under a parked gray pickup truck, towards the middle of the block.[15]   S.T., 3/19/2014, p. 27-28; T.T., 8/27/2014, 118-119.

Officer Davilla continued to chase the Defendant, who ran up Monmouth to Kensington Avenue and then into a thrift store. Officer Davilla chased the Defendant through the store, out the back exit and then into an area where the Defendant was climbing a six foot wall.[16] Officer Davilla drew his weapon and ordered the Defendant to show his hands.[17] The Defendant was eventually handcuffed and taken into custody. Officer Davilla then returned to the area where he saw the Defendant toss the silver object. He recovered a black and silver Smith & Wesson, Model SW40V5, from under the pickup truck.[18]   S.T., 3/19/2014, pp. 27-28; T.T., 8/27/2014, pp. 118-123, 127-129. He also recovered ammunition from the gun. The gun and the ammunition were placed on property receipts. Officer Davilla identified Exhibit C-32, the actual firearm, as the gun that he recovered from under the truck. He identified Exhibit C-33, the actual bullets, as the ammunition that he recovered from the gun. T.T., 8/27/2014, pp. 124-125.

---

[15] Officer Davilla did not see what the object was; he only knew that it was silver. At the time, he did not know anything about what Officer Frei felt while conducting the frisk. He did not realize that the Defendant had tossed a gun until he returned to the pickup truck and recovered the gun, which the only object under the truck. Id. at 119, 122-124.

[16] As he entered the store, Officer Davilla radioed his location to Officer Frei. Id. at 120.

[17] At that point, Officer Davilla noticed that Officer Frei was standing next to him. Officer Frei had his weapon drawn and was ordering the Defendant to show his hands. Officer Frei then holstered his weapon, sprayed the Defendant with mace. Both officers then took the Defendant down from the wall. S.T., 3/19/2014, p. 28.

[18] Officer Davilla returned to the area where the silver object was tossed, within minutes of it being tossed. S.T., 3/19/2014, pp. 28-29; T.T., 8/27/2014, p. 123.

6

Philadelphia Police Officer Ronald Weitman (hereinafter, "Officer Weitman") is an expert in the area of firearms identification and examination, as well as ballistics.[19] He is assigned to the Firearm Identification Unit (hereinafter, "FIU"), where he examines, identifies and test any evidence related to firearms received by the FIU.[20]  T.T., 8/27/2014, pp. 82-87.

Officer Weitman personally examined the firearm marked as Exhibit C-32, which he identified as a .40 Smith & Wesson semiautomatic pistol, model number SW40VE.   Officer Weitman also test fired the firearm and found it to be operable, as documented in his report, marked as Exhibit C-19.  He also personally examined the ammunition marked as Exhibit C-33, which he identified as twelve, 40 caliber Smith & Wesson bullets.  Id. at 87-93.

Officer Weitman's area of expertise does not include fingerprint or DNA testing.  He could not testify as to the success rate in obtaining such evidence.  The FIU receives approximately 6,000 gun cases a year.  Based on the cases he handles, Officer Weitman estimated that only ten percent (10%) of the guns received by FIU are submitted for fingerprint or DNA testing.  Stated otherwise, ninety percent (90%) of the guns received by FIU are not submitted for such testing.  The Crime Scene Unit, and not the FIU, decides whether a gun will be submitted for fingerprint and/or DNA testing.  Id. at 93-97.

In deciding whether a firearm will be tested for fingerprint and/or DNA evidence, the Crime Scene Unit reviews property receipts to determine the circumstances of how the firearm was recovered.  Id. at 97-98.  Where the property receipt indicates that a police officer observed a defendant toss a firearm, the Crime Scene Unit sends the firearm back to the FIU, noting "no need for prints, doesn't fit the protocol."  Id. at 98.  Even if there had been a request fingerprint

---

[19] The parties stipulated to Officer Weitman's expertise in these areas. T.T, 8/27/2014, pp. 82-83.
[20] Officer Weitman provided a detailed description of his job with the FIU. He also described the chain of custody of firearm evidence received by the FIU. Id. at 82-87.

7

and/or DNA testing in this case, the Crime Scene could have denied that request and sent it back to the FIU. Id. at 112.

MATTERS COMPLAINED OF ON APPEAL

On appeal, the Defendant asserts as follows:

a.  The lower court erred and abused its discretion by denying appellant's motion to suppress physical evidence where the SEPTA police officers had no jurisdiction to stop, frisk, search, cite, or arrest appellant; where the officers were going to issue a citation for a summary offense; and where there was no reasonable suspicion that appellant was armed and dangerous or probable cause to search or arrest appellant at the time he was stopped and frisked.

b.  The lower court erred and abused its discretion by denying appellant's Motion in Limine to Preclude Introduction of Prior Conviction where the defense was willing to stipulate, outside the presence of the jury, to appellant's prior convictions which render him ineligible to possess a firearm.

c.  The lower court erred and abused its discretion by preventing defense counsel from discussing the appellant's race in closing argument.

d.  The lower court erred and abused its discretion by overruling defense counsel's objection and allowing the Commonwealth to argue in closing that funding issues, including, but not limited to, school funding, were why the police did not test for fingerprints or DNA.

e.  The lower court erred and abused its discretion when it took judicial notice that the Philadelphia school district and police struggle with funding.

1925(b) Statement.

## DISCUSSION

### I.  Suppression

The Defendant asserts that this Court erred and abused its discretion in denying the his motion to suppress physical evidence, namely the firearm, claiming that the Septa police did not

8

have jurisdiction to stop, search, cite or arrest him, that the officers did not reasonable suspicion to search him, and that the officers did not have probable cause to stop, search and arrest him. It is this Court's view that none of these claims have merit and that they should not entitle the Defendant to appellate relief.

Where a motion to suppress evidence is denied, the standard of review is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Commonwealth v. Rose, 755 A.2d 700, 701 (Pa.Super. 2000). On review, the appellate court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when the read in the context of the record as a whole. Id. Where the record supports the trial court factual findings, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are incorrect. Id. The credibility of witnesses is within the sole province of the suppression court, which is entitled to believe all, part or none of the evidence presented. Commonwealth v. Angel, 946 A.2d 115, 117 (Pa.Super. 2008).

Here, the suppression record supports this Court's factual findings. Moreover, the legal conclusions drawn from those facts are free of error. Accordingly, this Court did not err or abuse its discretion in denying the Defendant's motion to suppress the firearm.

As noted above, the Defendant was arrested and charged with the crime of possession of a firearm prohibited. The Defendant moved to suppress the firearm, claiming that the Septa police officers did not have jurisdiction to stop him and/or probable cause to stop, search and arrest him. During the course of the evidentiary hearing, the Commonwealth presented the testimonies of Septa Police Officers Frei and Davilla. The Defendant did not present any

9

witnesses.  The unrefuted testimonies of Officers Frei and Davilla establish the following relevant facts.

On February 2, 2013, Officers Frei and Davilla were on duty, detailed to Operation Somerset, which was a joint collaborative agreement between Septa and the Philadelphia Police Department, involving Septa's Somerset El Station.  Officers Frei and Davilla were required to patrol the Somerset Station, and the two (2) block radius surrounding the Station, for the purpose of enforcing quality-of-life crimes, including public urination.  On the aforementioned date, at approximately 3:45 p.m., the officers saw the Defendant urinating in public, at 2846 Rush Street.  Said property was within a two (2) block radius of the Somerset El Station.  Officer Frei stopped the Defendant.  Officer Frei had authority to issue a citation on the spot or to arrest the Defendant and process him at the district.

Officer Frei approached, asked the Defendant to put his against the wall and began to conduct a pat down search of Defendant's outer garments.  He felt what he believed to be a gun in the Defendant's front waistband.  At that moment, the Defendant immediately fled.  Officers Frei and Davilla pursued the Defendant.  During the pursuit, Officer Davilla saw the Defendant toss a silver object under a gray, pickup truck parked on Monmouth Street, between Ruth Street and Kensington Avenue.  The officers eventually apprehended the Defendant.  Minutes later, they returned to the area where Officer Davilla saw the Defendant toss the silver object.  Officer Davilla retrieved a black and silver, .40 caliber Smith & Wesson handgun from underneath the aforementioned gray, pickup truck.  He did not recover anything else.

Based on the testimonies of Officers Frei and Davilla, this Court concluded that the Officers Frei and Davilla had jurisdiction to stop the Defendant, finding that their testimonies demonstrated that 1) the Defendant committed the offense of public urination, and was stopped

10

for said offense, within the territorial boundaries of Septa's Somerset Station under Operation Somerset; and, 2) that the officers were discharging their duties for Septa, pursuit to Operation Somerset when they stopped the Defendant. This Court also concluded that Officers Frei and Davilla had probable cause to stop, search and arrest the Defendant, finding that their testimonies demonstrated that they actually witnessed, and therefore knew with certainty, that the Defendant had committed the summary offense of public urination. S.T., 3/19/2014, pp. 35-38.

### a. Jurisdiction

The jurisdiction and authority of Septa police officers is set forth in the Railroad and Street Railway Police Act, which provides, in relevant part:

> Railroad and street railway policemen shall severally possess and exercise all of the powers of a police officer in the City of Philadelphia, in and upon, and in the immediate and adjacent vicinity of, the property of the corporate authority, or elsewhere within this Commonwealth while engaged in the discharge of their duties in pursuit of railroad, street railway or transportation system business.

22 Pa.C.S. §3303(a). As interpreted by the Pennsylvania Supreme Court, this statute provides transit police with two distinct grants of authority: primary and extraterritorial. Commonwealth v. Bloom, 979 A.2d 368, 370 (Pa.Super. 2009) (citing Commonwealth v. Firman, 813 A.2d 643, 647 (Pa. 2002)).

> Port Authority police have primary jurisdiction, or authority ... constrained by the geographical area corresponding within its territorial limits to exercise regular police powers in and upon, and in the immediate and adjacent vicinity of the property of the corporate authority. Port Authority police are granted extraterritorial jurisdiction, or authorization to arrest outside the territorial limits of the employer-municipality ... elsewhere within this Commonwealth while engaged in the discharge of their duties in pursuit of ... transportation system business, so long as the exercise of this authority bears a close connection to the interest of the Port Authority.

Bloom, 979 A.2d at 370-71 (internal citations and quotation marks omitted).

11

Here, as indicated above, Officers Frei and Davilla were on routine patrol, detailed to Operation Somerset, when they saw the Defendant commit the offense of public urination and stop him for said offense within a two (2) block radius of Septa's Somerset Station. Operation Somerset was a joint collaborative agreement between Septa and the Philadelphia Police Department, involving Septa's Somerset El Station, and the area surrounding the Station. . Pursuant to Operation Somerset, Officers Frei and Davilla were required to patrol the Station and the two (2) block radius surround the Station, to enforce quality-of-life crimes, including public urination.

In rendering a determination as to jurisdiction, this Court considered the totality of circumstance, including, and most significantly, Operation Somerset, pursuant to which Officers Frei and Davilla were required to enforce crimes, at, and within the two (2) block radius of, Septa's Somerset Station. This Court found that the officers saw the Defendant commit the crime of public urination and stopped the Defendant for said crime while on routine patrol, while engaging in the discharge of their assigned in pursuit of Septa's business. Applying the above cited law to the specific facts of this case, this Court concluded that the officers had primary jurisdiction primary to stop the Defendant, holding that the offense and the stop occurred in the immediate and adjacent vicinity of Septa's property.

Moreover, even if the officers had not exercised their authority in the immediate and adjacent vicinity of the Somerset Station, the circumstances surrounding the Defendant's violation, i.e. urinating in public within a two (2) block radius of the Somerset Station, were sufficiently connected with Septa's business to trigger the officers' extraterritorial jurisdiction. Pursuant to the Operation, it was Septa's business to have its officers enforce quality-of-life crimes in said area, to make the area safe. The officers were engaged in the discharging of their

12

duties pursuant to the Operation, i.e. enforcing a quality-of-life crime within the two (2) block radius of the Somerset Station, when they stopped the Defendant.

**b. Probable Cause**

A police officer has probable cause to arrest when "the facts and circumstances which are within the knowledge of the officer at the time of the seizure, and of which he has reasonable and trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.'" Commonwealth v. Thompson, 985 A.2d 928, 931 (Pa. 2009). "Probable cause requires only a probability, and not a prima facie showing, of criminal activity." Id. "Once probable cause is established, it does not dissipate simply because the suspect is not charged with the particular crime which led to the finding of probable cause." Commonwealth v. Canning, 587 A.2d 330, 332 (Pa.Super. 1991).

Furthermore:

> [A] warrantless search incident to a lawful arrest is reasonable, and no justification other than that required for the arrest itself is necessary to conduct such a search.... [I]n all cases of lawful arrests, the police may fully search the person incident to the arrest.... Moreover, this doctrine encompasses all arrests, including those involving summary offenses.

Commonwealth v. Williams, 568 A. 2d 1281, 1283 (Pa.Super. 1990) (internal citations and quotation marks omitted). An arrest is legal where state law authorizes such action. Id. at 1284; See also, Commonwealth v. Rose, 755 A. 2d 700, 702-703 (Pa.Super. 2000); Commonwealth v. In Interest William M., 655 A. 2d 158, 162 (Pa.Super. 1995), appeal denied, 666 A.2d 1058 (Pa. 1995).

Pennsylvania Rule of Criminal Procedure 400 provides:

> Criminal proceedings in summary proceedings shall be instituted either by:
>
> (1) issuing a citation to the defendant; or

13

(2) filing a citation; or

(3) filing a complaint; or

(4) arresting without a warrant when an arrest is specifically authorized by law.

Pa.R.Crim.P. 400.

The Philadelphia Code of Ordinances and Home Rule Charter §10-609 prohibits public urination. Pa.Code §10-609. Although the ordinance, itself, does not expressly authorize police officers to arrest upon violations, statutory authority to arrest for an such violations is found at 53 P.S. § 13349. Commonwealth v. Rose, 755 A. 2d at 702-703; Commonwealth v. In Interest William M., 655 A. 2d at 162. 53 P.S. § 13349, provides:

> Any police officer ..., upon view of the breach of any ordinance of any city of the first class, is authorized to forthwith arrest the person or persons so offending, without any process....

Id. By its express terms, § 13349 authorizes an arrest for violations of city ordinances where a police observes the violation. Rose, supra; In Interest William M., 655 A. 2d at 163.

Instantly, the unrefuted testimonies of Officers Frei and Davilla establish that they witnessed the Defendant urinating in public. These testimonies demonstrate more than a probability that the Defendant was committing the summary offense of public urination; they demonstrate a certainty that he was. Since the officers observed the Defendant breach the City of Philadelphia Ordinance §10-609, they had legal authority to arrest the Defendant. 53 P.S. § 13349; Rose, supra; In Interest William M., supra. No justification, other than that required for the arrest itself, was necessary to justify Officer Frei's search of the Defendant. Rose, supra; In Interest William M., supra.

14

In view of the above, the Defendant's claims that the officers lacked jurisdiction to stop him and/or probable cause to stop, search and arrest him are without merit and most fail.

## II.    Prior Conviction

The Defendant next asserts that this Court erred in denying his motion to preclude evidence of his prior conviction where the defense was willing to stipulate, outside the presence of the jury, to his prior conviction which rendered him ineligible to possess a firearm. This claim is totally devoid of merit. As noted by this Court as the motions hearing held on August 26, 2014, Defendant's claim is contrary to the law of this Commonwealth and therefore, without merit. Accordingly, it should not entitle the Defendant to appellate relief.    .

In reviewing a challenge to a denial of a motion in limine, the appellate court applies "an evidentiary abuse of discretion standard." Commonwealth v. Zugby, 745 A.2d 639, 645 (Pa.Super. 2000) (citation omitted). "Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and [the Appellate Court] will not reverse the court's decision on such a question absent a clear abuse of discretion." Id. (citation omitted).

At the motions hearing held on August 26, 2014, defense counsel argued that the United States Supreme Court's decision in Old Chief v. United States, 519 U.S. 172 (1999), supported the Defendant's motion to preclude evidence of his prior conviction for robbery. According to defense counsel, pursuant to Old Chief, the most appropriate manner of establishing the convicted felon element of §6105(a)(1) would be to stipulate to the prior conviction, outside the hearing of the jury, and thereby alleviate any prejudicial effect on the jury.   N.T., 8/26/2014, pp. 4-6, 9.

This Court rejected defense counsel's arguments and denied the Defendant's motion, concluding that the Old Chief was a federal case and not controlling. Instead, this Court

15

concluded that the controlling law was the Pennsylvania Supreme Court's decision in Commonwealth v. Stanley, 446 A.2d 583 (Pa. 1992), where in the Court held that the prosecution is not required to accept a defense offer to stipulate to the fact of a prior conviction where the conviction is an element of the offense charged. Id. (. N.T., 8/26/2014, pp. 5-10).

Moreover, in Commonwealth v. Jemison, 98 A.3d 1254 (Pa. 2014), our Supreme Court affirmed the continued validity of Stanley. In Jemison, the Court held, "in a persons not to possess firearms case, a defendant does not suffer unfair prejudice merely by the admission into evidence of his or her certified conviction of a specific, identified predicate offense, which has been offered by the Commonwealth to prove the prior conviction element of the crime of persons not to possess firearms."). Jemison, supra. In rendering a determination, the Court concluded, " Stanley remains the law of this Commonwealth, despite the United States Supreme Court's holding in Old Chief v. U.S., 519 U.S. 172 (1997). Jemison, 98 A.2d at 1255.

In view of the above, the Defendant's claim that this Court erred in denying his motion to preclude prior convictions must fail.

## III. Closing Statements

Preliminarily, this Court notes that the Defendant's next three assertions, See 1925(b) Statement at paragraphs 9(c)-(e), albeit not stated as such, are challenges to this Court's denial of the Defendant's pre-sentence and post-sentence motions. Both motions alleged that the Defendant was entitled to a new trial because this Court erred when: 1) it sustained the Commonwealth's objection to defense counsel's comment on the Defendant's race in closing argument (N.T., Closing, 8/27/2014, pp. 27-29, 54-60); 2) it overruled defense counsel's objection to the Commonwealth's comment on funding issues in closing argument (N.T., Closing, 8/27/2014, pp. 45, 60-61); and, 3) it took judicial notice of the funding issues in

16

Philadelphia (N.T., Closing, 8/27/2014, p. 60). See Motion for Extraordinary Relief, 10/29/2014; Post-Sentence Motion, 11/5/2014.

Both motions were denied. Following oral argument on October 31, 2014, this Court denied the Defendant's motion for extraordinary relief, finding: 1) defense counsel's comment on the Defendant's race in closing argument was improper and highly prejudicial, N.T., 10/31/2014, pp. 4-13, 18-21; 2) the Commonwealth's comment on the City's funding issues in closing argument was neither improper nor prejudicial, N.T., 10/31/2014, pp. 13-17, 21-23; and, 3) the Court's taking of judicial notice was outside the jury and harmless error. N.T., 10/31/2014, p. 15. The Defendant's post-sentence motion was denied, without a hearing, by Order of this Court, on November 10, 2014. A review of the record and the applicable law reveals that this Court did not err in denying the Defendant's motions. As such, the Defendant's identical claims of error on appeal must fail.[21]

---

[21] Notwithstanding a thorough search, this Court was unable to locate a single case pertaining to defense misconduct. Accordingly, this Court relies on case law addressing prosecutorial misconduct, which this Court believes is equally applicable to defense misconduct based on this Court's review of ABA Standards of Criminal Justice, [Prosecution Function] Standard 3-6.8 and [Defense Function] Standard 4-7.8.

> [Defense Function] Standard 4-7.8 Argument to Jury
> (a) In closing argument to the jury ..., defense counsel may argue all reasonable inference from evidence in the record.... Defense counsel should not knowingly misstate the evidence in the record, or argue inferences that defense counsel knows have no good faith support in the record.
> ....
> (c) Defense counsel should not make any argument calculated to appeal to the prejudices of the jury.
> ....
> (e) Defense counsel may fairly respond to arguments made in the prosecutions' initial closing argument. Defense counsel should object and request relief from the court regarding prosecution arguments it believes are improper rather than responding with arguments that counsel knows are improper.
>
> (f) If the prosecution is permitted a rebuttal argument, the defense counsel should craft the defense closing argument to anticipate the government's rebuttal. If the defense counsel believes that the prosecution's rebuttal closing argument is or was improper, the defense counsel should timely

The prosecution and the defense are accorded reasonable latitude in closing arguments and both may employ oratorical flair in arguing their case to the jury. Commonwealth v. Weiss, 776 A.2d 958, 968 (Pa. 2001); Commonwealth v. Chimel, 777 A.2d 459, 464 (Pa.Super. 2001). Counsel must be free to present arguments with logical force and vigor. Commonwealth v. Chamberlain, 30 A.3d 381, 407-08 (Pa. 2011) (citing Commonwealth v. D'Amato, 526 A.2d

---

object and consider requesting relief from the court, including an instruction that the jury disregard the improper portion of the argument or an opportunity to reopen argument and respond before the factfinder.

[Defense Function] Standard 4-7.9 Facts Outside the Record
When before a jury, defense counsel should not knowingly refer to, or argue on the basis of, facts outside the record, unless such facts are matters of such common public knowledge on human experience or are matters of which a court may clearly take judicial notice, or are facts which counsel reasonably believes will be entered into the record at the proceeding.

[Prosecution Function] Standard 3-6.8 Argument to Jury
(a) In closing argument to the jury ..., the prosecution present arguments and a fair summary of the evidence that proves the defendant guilty beyond a reasonable doubt. The prosecutor may argue all reasonable inferences from the evidence in the record, unless a prosecutor knows an inference to be false. .... The prosecutor should not knowingly misstate the evidence in the record, or argue inferences that the prosecutor knows have no good faith support in the record....
....
(c) The prosecutor should not make any argument calculated to appeal to improper prejudices of the trier-of-fact. The prosecutor should make only those arguments that are consistent with the trier's duty to decide the case on the evidence, and should not seek to divert the trier from that duty.

(d) If the prosecutor presents rebuttal argument, the prosecutor may respond fairly to arguments made in the defense closing argument, but should not present or raise new issues. If the prosecutor believes the defense closing argument is or was improper, the prosecutor should timely object and request relief, from the court, rather than respond with arguments that the prosecutor knows to be improper.

[Prosecution Function] Standard 4-7.9 Facts Outside the Record
When before a jury, the prosecutor should not knowingly refer to, or argue on the basis of, facts outside the record, unless such facts are matters of such common public knowledge on human experience or are matters of which a court may clearly take judicial notice, or are facts which counsel reasonably believes will be entered into the record at the proceeding.

18

300, 309 (Pa. 1997)). Counsel may comment upon fair deductions and legitimate inferences made from the evidence presented during testimony. Id. at 408.

Remarks to the jury in closing arguments are not improper, and do not constitute reversible error, "unless their unavoidable effect is to prejudice the jury so that a true verdict cannot be rendered because the existence of bias and hostility makes it impossible to weigh the evidence in a neutral manner." Id; See also, Commonwealth v. Carpenter, 515 A.2d 531 (Pa. 1986). Moreover, in evaluating the alleged impropriety or prejudicial effect of counsel's remark, the remark must be viewed in the context in which it was made. Chamberlain, 30 A.3d at 408 (citing D'Amato, supra; Carpenter, supra; Commonwealth v. Smith, 416 A.2d 986, 989 (Pa. 1980)).

As such, prosecutorial and/or defense misconduct will not be found where comments were based on evidence or proper inferences therefrom, or amounted to oratorical flair. Chamberlain, 30 A.3d at 406-408. It is the duty of the trial court to rule upon counsels' comments in closing arguments. Chamberlain, 30 A.2d at 408 (citing D'Amato, 526 A.2d at 309-310; Commonwealth v. Simmons, 248 A.2d 289, 292 (Pa. 1968). The appellate court is limited to reviewing whether the trial court abused its discretion. Id.

### a. Defense Counsel's Comments on the Defendant's Race

In anticipation of the Commonwealth's closing argument on flight, defense counsel made the following comment on the Defendant's race:

> DEFENSE COUNSEL: Now the Commonwealth is going to say to you that innocent men don't run. Unfortunately, this is just not true. Mr. Jones has a reason to run. Mr. Jones is a black man in Philadelphia.

N.T., Closing, 8/27/2014, p. 27. The prosecutor immediately objected and in response, this Court called sidebar. Id. Following a sidebar discussion, this Court sustained the prosecutor's

19

objection and instructed the jury to disregard defense counsel's attempt to raise an issue of race in her closings, stating:

> [R]ace has not been a component in this case. There is no allegation that there was any racial motivation by either of the police officers to stop the [D]efendant on the basis of his race. Rather, there's been an [ad]mission on the part of the [D]efendant that he was in fact urinating on the wall and that's why he was stopped by the police. I know that race is a[ ]part of our life every day in this world. But it is not a factor in this case at this time. You are only to pay attention to the facts as presented from the witness stand. There has been no testimony in this case that the [D]efendant was stopped because of his race. As such, I ask you and instruct you to no – I'm trying to find the right words. But to place that out of your mind, the argument that was being presented by the public defender with respect to that issue and leave that issue alone. I hope that you all can do that and solely just look at the facts of this case as the have been presented from the witness stand today. We will proceed forth with the case. I will allow the attorney for [the Defendant] to finish her argument, and then we will allow the district attorney to give her argument....

Id. at 28-29.

The prosecutor objected to defense counsel's comment, arguing that it was improper and highly prejudicial.

> PROSECUTOR: ... [N]ot only was no issue of race ever presented to the jury at any time during trial.... What is on the record is that the officers can arrest the defendant for ... [the summary offense of urinating in public]. And if they chose to arrest him and process him at the district, not only would they be able to do a pat down, they would be able to do full search incident to arrest.
> And ... the testimony on the record is the officers turned the vehicle around ... and pulled up to the side of the road.
> And ... counsel chose to present this argument to the jury at the point in time that the Ferguson Case is all over the news. I found it highly prejudicial. It was highly improper ... I would have had the objection no matter what is happening in the news at the moment. But the fact is when tensions are high that that argument was raised before the jury is unfathomable to me and that's why I objected.

N.T., Closing, 8/27/2014, pp. 56-57.[22]

---

[22] See also, N.T., 10/31/2014, pp. 18-21.

Defense counsel responded that her comment was made in anticipation of the

Commonwealth's closing argument on flight and therefore, appropriate. This Court disagreed.

> DEFENSE COUNSEL: I do believe that this [the Defendant's race] was an appropriate area to comment on. Mr. Jones -- the jury has the ability to observe Mr. Jones. He ... is a black man. And I was commenting on this in the area of motivation for running because the Commonwealth, of course, is going to say his motivation for running is the gun. [T]here is certainly many motivations for innocent people to run, and this [being a black man in Philadelphia] is one of them.
>
> COURT: .... You were playing the race card. You were trying to put something into evidence that wasn't evidence. You were trying to insinuate and get to the jury that Mr. Jones ran because it was a white cop and a black man. That was clear to me.... There was no evidence at all, not a piece of evidence presented during any part of this case that race played any factor in this arrest.
> In fact, you told the jury in closing that your client in fact was urinating against the wall. That was a fact. They pulled the man over because he was urinating against the wall. For you to play the race card during the closing that race was at issue to me was for nothing else but to inflame the jury, to taint the jury, to get the jury to take a fact that was not in evidence.
> ...
> I don't know what else your intention could be.

N.T., Closing, 8/27/2014, pp. 56-57.[23]

As noted by the prosecutor, defense counsel chose to present this argument to the jury at

the point in time that the Ferguson Case was all over the news. This Court found that defense

counsel's comment on the Defendant's race was highly prejudicial and highly improper. The

comment was not based on the evidence of record. It was not a fair deduction and/or a legitimate

inference made from the evidence presented during testimony. Moreover, its unavoidable effect

was to prejudice the jury so that a true verdict could not be rendered because the existence of

bias and hostility makes it impossible to weigh the evidence in a neutral manner.

### b. Prosecutor's Comments on Funding

---

[23] See also, N.T., 10/31/2014, pp. 4-13, 23.

In her closing argument, the prosecutor made the following comment on funding:

> PROSECUTOR: I would love to have fingerprints, DNA ... in every case that I try in this building. It's not reality. This is the City of Philadelphia and funds are low. There are priorities and the cases where there are certain protocols in place like Officer Weitman testified to when an officer sees certain things happen under particular circumstances, they're not holding it for prints, they're not testing it for DNA. We don't have the money. We don't have the time.
>
> We have 6,000 guns coming from the FIU every year. We can barely get them test-fired in time to make it to court. That's the reality of this system. Every August, we have the same discussion, can the public schools in Philadelphia open this year?

N.T., Closing, 8/27/2014, pp. 44-45[24].

Defense counsel objected, arguing that the prosecutor's comments on funding were not based on facts of evidence.[25] This Court disagreed and accepted the prosecutor's response to defense counsel's objection.

> COURT: You brought up the issue of why fingerprints and DNA are not taken from every gun in the city every time when an arrest is made.[26]
>
> DEFENSE COUNSEL: Right.
>
> COURT: Absolutely the issue of whether or not the funds are available to fingerprint and DNA swab 6,000 guns a year should be something that's raise in argument. And it is a fact. It's judicial notice that the school district [does not] have funding every year and that the police officers are strugg[ling] with funding.
>
> DEFENSE COUNSEL: Your Honor, It wasn't a fact that was placed into evidence is what I'm saying. And while I – just like race was something the jury could have –
>
> COURT: Apples and oranges. Please stop bringing it up.
>
> PROSECUTOR: Your Honor, first of all ... it was an issue that [defense counsel] raised that I responded to that I don't think is in any way outside of the purview of the jury. And I don't think it is in any way prejudicial.
>
> COURT: I don't find that either.

---

[24] See also, N.T., 10/31/2014, pp. 21-23.

[25] Defense counsel subsequently argued that the prosecutor's comment was prejudicial because it brought in the school children. N.T., 10/31/2014, pp. 15-16.

[26] See, N.T., Closing, 8/27/2014, pp. 19-22.

22

N.T., Closing, 8/27/2014, pp. 58-60.[27]

As indicated by this Court, the prosecutor's comment on funding was not prejudicial to the Defendant. N.T., Closing, 8/27/2014, p. 60. As such, even if this Court erred in concluding that the prosecutor's comment was proper, the Defendant is not entitled to relief because the prosecutor's comment did not prejudice the Defendant. Chamberlain, 30 A.3d at 408; D'Amato, 526 A.2d at 309; Commonwealth v. Carpenter, supra.

**c. Judicial Notice**

Pennsylvania Rule of Evidence 201 provides, in relevant part:

> (b) Kinds of Fact That May Be Judicially Noticed. The court may judicially notice of fact that is not subject to dispute because it:
>
> 1) is generally known with the trial court's territorial jurisdiction; or
>
> 2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.
>
> (c) Taking Notice. The court may:
>
> (1) the court may take judicial notice on its own.
>
> (d) Timing. The court may take judicial notice at any stage of the proceedings.

Pa.R.E. 201(b)(1-2), (c)(1), (d); "A fact is indisputable if it is so well established to be a matter of common knowledge." Kinley v. Bierly, 876 A.2d 419, 421 (Pa.Super. 2005).

Here, this Court took judicial notice of the City's funding issues during closing arguments presented on August 27, 2014. This Court believes that the fact that funds are low in the City of Philadelphia is a matter of common knowledge in Philadelphia. As this Court did not

---

[27] See also, 10/31/2014, pp. 14-17.

23

err in taking judicial of this fact. Even if this Court had erred, which it does not believe it did, the error was harmless, and did not cause any prejudice to the Defendant. Id. "Harmless error exists where ... the error did not prejudice the defendant or the prejudice was de minimus...." Commonwealth v. Freeman, 827 A.2d 385, 411 (Pa. 2003); Commonwealth v. Hutchinson, 811 A.2d 556, 561 (Pa. 2002). Significantly, this Court had previously found that the prosecutor's comment on funding was not prejudicial to the Defendant. N.T., Closing, 8/27/2014, p. 60; N.T., 10/31/2014, p. 15. Moreover, the Court took judicial notice of the funding issue outside of the jury's presence. Under these circumstances, the Court's error does not warrant a new trial and/or entitle the Defendant to other relief.

## CONCLUSION

For the foregoing reasons, this Court requests that the Defendant's appeal be dismissed and the judgment of sentence be affirmed.

BY THE COURT:

_____

SEAN F. KENNEDY, J.

24

Commonwealth vs. Stanley Jones
CP-51-CR-0009096-2013
1925(b) Opinion

## **PROOF OF SERVICE**

I hereby certify that I am this 14th day of October, 2014, serving the foregoing Court Opinion upon the person(s) and in the manner indicated below, which service satisfies the requirement of Pa.R.Crim.P. 114:

**Defense Counsel/Party:**    Jason E. Parris, Esquire
Defender Association of Philadelphia
1441 Sansom Street
Philadelphia, PA 19102

Type of Service: ( ) Personal      (x) First Class Mail    Other, please specify:_____

**District Attorney:**    Hugh J. Burns, Jr., Esquire
Chief, Appeals Unit
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107-3499

Type of Service: ( ) Personal      (x) First Class Mail    Other, please specify:_____

**Date: 10/14/2016**

Kathleen Kennedy, Esquire
Law Clerk for Judge Sean F. Kennedy